### NELSON v. SECRETARY OF AGRICULTURE.
### No. 8031.

Circuit Court of Appeals, Seventh Circuit.

Feb. 17, 1943.

---

454

Charles J. Gallagher, John P. Costello, and James J. Coughlin, all of Chicago, Ill., for petitioner.

Daniel B. Britt, of Chicago, Ill., and Robert C. Barnard, of Washington, D. C., for respondent.

Before EVANS, MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Employing the remedy afforded by Section 6b of the Commodity Exchange Act, 7 U.S.C.A. § 9, petitioner seeks to set aside an order of the Secretary of Agriculture, denying him all trading privileges on all contract markets for the period of ninety days and directing that such markets refuse him such privileges for that period, entered in a proceeding instituted by the Secretary as provided in said Section 6b, wherein respondent was charged with having (1) failed to register as a floor broker with the Secretary; (2) willfully and knowingly, without prior consent of his principal, Fenner and Beane, or the customers for whom he made trades, become the buyer with respect to selling orders and the seller with respect to buying orders, and, (3) entered into other transactions in violation of the Act.

The Referee to whom the matter was referred for hearing, after reciting the history of events over a period extending from September, 1937 to June 19, 1941, found that petitioner, as a floor broker, make contracts for future delivery of wheat for Fenner and Beane and certain other clearing members of the Chicago Board of Trade, receiving compensation only from the first named firm; that he did not register until May, 1940; that until that time he believed that he was not required to register; that on February 17, 1940, and on fifty-six other occasions, petitioner, knowingly and willfully took the other side of his customers' orders without prior consent from his principal or its customers in violation of Section 4b (D), 7 U.S.C.A. § 6b (D).

The Referee recommended petitioner's suspension from all trading privileges on contract markets for the period of one year. The Assistant Secretary adopted substantially the findings of the Referee, concluding (1) that petitioner had acted as a broker without registering for more than two years and (2) that he had willfully and knowingly taken the other side of his customers' orders without prior consent, and suspended him from trading privileges for ninety days.

■ Petitioner does not question the fact that he did not register prior to 1940 as a floor broker or deny that he carried on the activities of a broker within the meaning of the Act in many transactions for Fenner and Beane, a clearing house by whom he was employed, or claim that in these transactions he was exempt from registration. His position is that he was misled by the regulations and pronouncements, oral and written, of the Secretary's administrative office to believe that it was not necessary for him to register, inasmuch as he represented only one clearing house, and he emphasizes the fact that when he discovered that he was required to register, he readily complied. Obviously, if he was required to register, his failure to do so is not excused by such circumstances. They were pertinent only in determining for how long he should be suspended. Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, 659.

He denies that substantial evidence supports the finding that he represented other clearing houses, points out that it is undisputed that he received no brokerage fees from them and insists that properly only one construction can be put upon those transactions, namely, that in each of them he was the principal trading on his own account and the clearing house, his broker. In view of the fact that the law required him to register, even though he represented only one house, we think it unnecessary to attempt to characterize properly his true legal status in his transactions with houses other than Fenner and Beane.

Petitioner objects to a finding of the Secretary that he entered into cross trades; but the evidence bearing upon this issue is not preserved in the record, and, though he does not insist that we may review the finding, he contends that the requirement of the Act that he shall not engage in "cross trades" is so indefinite and uncertain as a statutory definition of the prescribed standard of conduct as to afford him no opportunity to be advised of the real charge against him.

■ The statute does not define "cross trades" and the record does not disclose what constitutes such a trade but, in view of our conclusions, it is unnecessary for us to pass upon the factual question of whether petitioner engaged in cross trades or the legal question of whether the statutory definition is so indefinite as to be invalid. This follows from the fact that, as indicated, there is no denial of violation of the requirements to register and from the further fact that petitioner willingly and knowingly took the other side of his customers' orders without prior consent. On the latter fact, the evidence upon which the Secretary relied is not in the record. Consequently there can be no review of the facts; we must accept the finding as it comes to us. Inasmuch as Section 4b (D) forbids willingly and knowingly taking the other side of a customer's order without prior consent and inasmuch as we are bound by the finding, petitioner's violation in this respect must stand unimpeached in fact. The only questions for our consideration, therefore, are entirely legal in character.

■ In enacting the legislation the Congress found that dealing in commodities is "affected with a national public interest" and that various transactions and practices had grown up detrimental to the producer, the consumer and those of the public engaged in commerce to such an extent as to amount to burdens upon and obstructions to commerce in commodities. Following this congressional finding of fact, that body expressly provided that, before engaging in buying and selling commodities on contract markets, a floor broker should register with the Secretary and, among other things, should not "willingly and knowingly and without prior consent of his principal or customer become the buyer with respect to any selling order of such person or become the seller in respect to any buying order of such person." In view of its unimpeached finding of fact, Congress, by virtue of the commerce clause, had authority to remove the burdens upon and obstructions to commerce and to require those engaged in purchasing and selling commodities on contract markets to follow certain standards of practice as a legitimate and reasonable means of effectuating removal of such burdens and obstructions. Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839; Bartlett Frazier Co. v. Hyde, 7 Cir., 65 F.2d 350; Board of Trade of City of Chicago v. Wallace, 7 Cir., 67 F.2d 402; Moore v. Chicago Mercantile Exchange, 7 Cir., 90 F.2d 735.

■ The requirement to register is admittedly reasonable and no one has had the temerity to urge that a requirement that brokers shall not take the opposite side of their principals or customers in trades is in any wise unreasonable. In as much as Congress has jurisdiction over and the right to regulate the activities of contract mar-

kets and has prescribed reasonable rules governing the conduct of such markets with a view to preventing abuses and securing freedom from discriminating burdens and obstructions, petitioner and all others similarly situated are bound by the legislation. The court may not interfere with this regulation of commerce under a power granted by the Constitution, unless some vital constitutional right of petitioner has been violated, or unless the action required is unnecessary or inappropriate for the protection of consumers, producers and the public. All this petitioner does not dispute, but he contends that Section 6b as interpreted in this proceeding, is unconstitutional because the charge and order are criminal in character and that to give such force to the Act is to work delegation of judicial functions to the Secretary and to violate Sections 1 and 2 of Article III of the Constitution and the Fifth and Sixth Amendments.

A similar contention was presented in Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43, 43 S.Ct. 470, 67 L.Ed. 839, but the court found it unnecessary to decide it for the reason that the complaining parties had not been charged with commission of acts which would have subjected them to punishment. But this court, in Board of Trade of City of Chicago v. Wallace, 67 F.2d 402, 407, expressed the belief that the Supreme Court in the Olsen case had at least impliedly approved the statutory scheme for enforcing observance of the Act.

As the Circuit Court of Appeals for the First Circuit states in Nichols & Co. v. Secretary of Agriculture, 131 F.2d 651, 659: "Suspension of a registrant is not primarily punishment for a past offense but is a necessary power granted to the Secretary of Agriculture to assure a proper adherence to the provisions of the Act." In Board of Trade of City of Chicago v. Wallace, 7 Cir., 67 F.2d 402, 407, certiorari denied 291 U.S. 680, 54 S.Ct. 529, 78 L.Ed. 1067, petitioner alleged that Section 6a, 7 U.S.C.A. § 8, was unconstitutional for the reasons here advanced. Section 6a provides that a commission composed of the Secretary of Agriculture, the Secretary of Commerce, and the Attorney General may suspend for a period of six months, or revoke, the designation of any board of trade as a "contract market" upon showing that it has failed or is failing to comply with any of the requirements of the Act. We said: "The premise that this is in essence a criminal proceeding rests wholly in assertion; no authority is cited in support. We see nothing of criminal nature in a proceeding for the revocation of a license or permit or designation granted under the authority of a statute which also authorizes revocation in case the grantee transgresses the statute."

In Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89, 94, a similar provision in the Securities and Exchange Act was construed. Section 19(a) (3) of the Act, 15 U.S.C.A. § 78s (a) (3) provides that the Securities and Exchange Commission may suspend or expel from the Exchange any member or officer who has violated any provision of the Act. The court upheld an order of the Commission expelling petitioner saying: "In considering the order of expulsion as a punishment for past offenses the petitioner is in error. Section 19a (3), * * * authorizes an order of expulsion not as a penalty but as a means of protecting investors, if in the Commission's opinion such action is necessary or appropriate to that end. Since the purpose of the order is remedial, not penal, there is no basis for the contention that Wright's violation of the statute must be proved beyond a reasonable doubt. See Board of Trade v. Wallace, 7 Cir., 67 F. 2d 402, 407."

■ It is true that Section 19(a) (3) of Securities and Exchange Act expressly provides that the commission may suspend or expel members of the Exchange if in its opinion "such action is necessary or appropriate for the protection of investors." However, the absence of a specific provision to that effect in Section 6b of the Commodity Exchange Act does not alter the legal situation. As notice is given by section 3, 7 U.S.C.A. § 5, that the Act is intended to promote the national interest and prevent undue burdens on commerce, this expressed intent governs as well all administration of the Act.

■ In permitting petitioner to buy and sell grain for future delivery on contract markets, the Government has in effect granted him a privilege. Suspension of such a privilege for failure to comply with the statutory standard is merely withdrawal by the Government of permission to engage in a business affected with the national public interest in which the person has no inherent right to engage, but in which he may participate only upon compliance with conditions imposed by Congress in the exercise of its power over commerce. Inas-

much as Congress has the power to fix conditions upon which petitioner may engage in trading on the market (Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839), it may, through an administrative agency, withdraw the privilege for violation of these conditions. Farmers Livestock Commission Co. v. United States, D.C.E.D.Ill., 54 F.2d 375, 378 (Court of three judges); Board of Trade v. Wallace, 7 Cir., 67 F.2d 402, 407; Wright v. Securities & Exchange Commission, 2 Cir., 112 F.2d 89, 95; Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643; Brinkley v. Hassig, 10 Cir., 83 F.2d 351, 354.

As the order of the Assistant Secretary was a proper administrative act and infringed upon none of petitioner's constitutional rights, it is affirmed.