**JOLIET OIL CORPORATION v. BROWN et al.**

**No. 43C1021.**

District Court, N. D. Illinois, E. D.

Dec. 16, 1943.

John W. Dorgan and Walker Butler, both of Chicago, for plaintiff.

George J. Burke, of New York City, Alex Elson, of Chicago, Ill., Fleming James, Jr., of Washington, D. C., and John F. Manierre and Robert B. Johnstone, both of Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff has filed its complaint herein against Prentiss M. Brown as Administrator of the Office of Price Administration (for whom Chester A. Bowles, Acting Administrator, has been substituted), Talbot M. Smith, Hearing Administrator, W. M. McFarland, Chief Hearing Commissioner, and Milton M. Herman, Enforcement Attorney, praying that defendants be enjoined from enforcing a certain suspension order against plaintiff, and have moved for a temporary injunction. An answer has been filed and this motion has been submitted for hearing on the bill and answer.

It is alleged in the bill that plaintiff, a retail dealer in petroleum products, was served with a notice that it had been charged with failing to account for gasoline coupons, ration credits and other ration evidence received by it, that it had transferred gasoline to consumers and accepted in exchange therefor coupons bearing improper notations and endorsements, that it had transferred gasoline coupons without receiving in exchange therefor gasoline in an amount equal to the gallonage value of the transferred coupons and had offered to transfer ration coupons without receiving in exchange therefor gasoline equal in amount to the gallonage value of the cou-

pons so received. It was ordered to appear before M. W. McFarland, Chief Hearing Commissioner for the Region, for the purpose of determining whether a suspension order should be issued against it, a hearing was had, it was found guilty and a suspension order issued providing for a suspension period of 90 days, the station to remain closed for 20 days, the balance of the suspension order to be stayed indefinitely on condition that defendant thereafter comply with all ration orders and regulations of the Office of Price Administration. An appeal was taken to the Chief Hearing Administrator in Washington, D. C., who sustained the order except that he changed the period of actual suspension from 20 to 30 days.

Plaintiff in its complaint alleges that it is innocent of the charges made against it, but does not raise that question on this motion. It does not question the authority of Congress to delegate to the President the powers granted in the Second War Powers Act, § 301, 56 Stat. 176, 178, amending Act, June 28, 1940, § 2(a), 50 U.S.C. Appendix, § 633, 50 U.S.C.A.Appendix, § 633, nor the right of the President to delegate the exercise of such powers to the Office of Price Administration. Its contentions here are two (a) that the suspension order is in the nature of a penalty, a punishment for an alleged offense against the Government, and that an administrative body may not be authorized to impose penalties upon wrongdoers, such power belonging exclusively to the courts, and (b) that Congress has provided in the Act two remedies for violations of its provisions, the writ of injunction and criminal prosecution, and these are exclusive.

The Act authorizes the President whenever he is satisfied that the fulfillment of requirements of the defense of the United States will result in a shortage in the supply of any material or any facilities for defense or for private account or for export, to allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense. It further authorizes him (Sec. 2(a) (8) to perform the functions and exercise any power, authority or discretion conferred upon him by said section 2(a) through such department, agency or officer of the Government as he may prescribe. Under the authority of these provisions power has been dele-

gated to the Office of Price Administration to regulate and control the sale, among other things, of gasoline to retailers or dealers. The Office of Price Administration is also authorized to take such measures as it may deem appropriate for administering the ration powers conferred on it, to take such measures as it may deem necessary or appropriate for the enforcement of any rationing regulation prescribed by it and to prohibit the sale, transfer or other disposition of products to any retailer who acts in violation of any such rationing regulation or order.

Pursuant to such authority the Office of Price Administration adopted certain regulations for the sale of gasoline by dealers and provided that in case of a violation of the regulations, an order of suspension suspending the right of the dealer to deal in the article for a specified period of time. The rules also provided for notice and hearing before the issuance of a suspension order. In conformity with the procedure defendant was charged with a violation of the regulations, given notice to appear, did appear, was given a hearing, found guilty and the order of suspension followed.

■ First. Was the suspension order in the nature of a penalty which the administrative agency had no power to impose?

The country is at war. For the purpose of carrying on the war the Government may requisition the entire man power and all the material resources of the nation. Congress, as within its constitutional powers it may, has authorized the President, when he is satisfied that the fulfillment of the requirements of the United States will result in a shortage of the supply of any material for defense, to allocate such material in such manner and upon such conditions and to such extent as he may deem necessary or appropriate for the national defense.

The President has found that the requirements for the defense of the nation will result in a shortage of the supply of gasoline. He has therefore the authority to allocate that material, to determine how it shall be distributed. He might have done that by taking over the entire supply and distributing it through governmental agencies. He has chosen to distribute through the established retail dealers that portion of the available supply which the Government does not need for war purposes, subject to such regulations as he, or those to whom he may delegate that power, may prescribe. In making such distribution the dealers are acting as agents of the Government and are not engaged in a purely private business. As agents of the Government they are bound, like any other agent, to observe the orders of their principal, and, if any such dealer fails so to do, his agency may be revoked or suspended.

The temporary revocation by the Hearing Commissioner of plaintiff's privilege of sharing in the allocation of gasoline was not a penalty imposed as punishment for past action. It was merely a measure intended for the protection of the public and as a warning to the dealer against future violation of the restrictions imposed by the Office of Price Administration on the distribution of gasoline. It is common practice for legislative bodies in providing for the regulation of those businesses which they have power to regulate to set up administrative bodies, giving them authority to prescribe the details of regulation, to make rules giving effect to the purpose of the legislature and to provide that the administrative body may, in case of disobedience of such regulations, revoke the right of the person guilty of such disobedience to further engage in such business or suspend such right temporarily. The Securities Exchange Act, Sec. 19(a) (3), 15 U.S.C.A. § 78s (a) (3), authorizes the Commission after appropriate notice and hearing, by order to suspend for a period not exceeding twelve months or to expel from a national securities exchange any member whom it should find had violated any provision of the Act or any of the rules and regulations thereunder. If such suspension or expulsion were to be considered as a penalty or punishment Congress could not, of course, confer upon the Commission the power to inflict it. In Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89, Wright who had been ordered expelled from an exchange by the Commission assailed this provision of the Act as being unconstitutional. But the court (112 F.2d at page 94) said: "In considering the order of expulsion as a punishment for past offenses the petitioner is in error. Section 19(a) (3), 15 U.S.C.A. § 78s (a) (3), authorizes an order of expulsion not as a penalty but as a means of protecting investors, if in the Commission's opinion such action is necessary or appropriate to that end."

To the same effect is Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, at page 659, where the court said: "We believe that suspension of a registrant is not primarily punishment for a past offense but is a necessary power granted to the Secretary of Agriculture to assure proper adherence to the provisions of the Act."

This passage of the opinion was quoted with approval by the Circuit Court of Appeals of this circuit in Nelson v. Secretary of Agriculture, 133 F.2d 453, 456.

In Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, Mitchell had been indicted, charged with attempting to evade his income tax by fraudulently making certain deductions in his income tax return for the year 1929. He was acquitted but thereafter the Commissioner of Internal Revenue, after a hearing, made a finding that Mitchell had in his return for that year made certain fraudulent deductions. The Commissioner, under the provisions of Sec. 293 of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev. Code, § 293, assessed the deficiency and 50 per cent in addition thereto against Mitchell. He protested this assessment contending that such additional assessment was a penalty and that his acquittal of the criminal charge was a bar to this proceeding under the doctrine of double jeopardy. The court held otherwise, saying in the course of its opinion (303 U.S. page 399, 58 S.Ct. at page 633, 82 L.Ed. 917): "Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted."

In this case the permission to plaintiff to sell gasoline was a privilege voluntarily granted. Rather than disturb the business of established dealers by taking to itself the allocation of gasoline the Government granted to dealers already engaged in that business, the privilege of such distribution under and subject to the regulations imposed by it. The revocation of the privilege for a failure to observe the regulations was not in the nature of a criminal penalty, but as the Supreme Court says "a remedial sanction". That is the position taken by the Circuit Court of Appeals of this circuit in Nelson v. Secretary of Agriculture, supra, 133 F.2d at pages 456, 457, where the court says: "In permitting petitioner to buy and sell grain for future delivery on contract markets, the Government has in effect granted him a privilege. Suspension of such a privilege for failure to comply with the statutory standard is merely withdrawal by the Government of permission to engage in a business affected with the national public interest in which the person has no inherent right to engage but in which he may participate only upon compliance with conditions imposed by Congress in the exercise of its power over commerce. Inasmuch as Congress has the power to fix conditions upon which petitioner may engage in trading on the market (Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839), it may, through an administrative agency, withdraw the privilege for violation of these conditions."

■ Second: Plaintiff further urges that as Congress has provided in the Act that for failure to observe the provisions of the Act or the regulations thereunder the offender may be proceeded against criminally and the courts are given power to enjoin violations these remedies are exclusive and the Office of Price Administration has no power under the Act to suspend plaintiff's right to do business. I cannot agree.

A similar question was under consideration in Schwuchow v. City of Chicago, 68 Ill. 444. The City of Chicago was granted power in its charter to regulate the sale of intoxicating liquors, including the right to license the sale and to provide for the imposition of penalties for violation of the regulations. The city passed an ordinance for the licensing of liquor dealers and regulating the conduct of their places of business and providing that the license might be revoked by the Mayor whenever it should appear that the licensee had violated any provision of any ordinance relating to the sale of such liquors. By another ordinance it was provided that any person who should keep open on Sunday any place where liquor was sold or sell liquor on Sunday might be fined. Appellant, a licensee under the ordinance, was convicted of violating this latter ordinance and was fined. The Mayor then revoked his license and, appellant continuing to sell, an action was brought against him for selling without a license. He defended on the ground that the revocation of his license was unlawful. The court held that the license was properly revoked, saying in its opinion (68 Ill. at pages 447, 448)

880

"Here are powers conferred upon the city which would seem to be ample to justify the action taken in this case. * * *

"It is, however, contended, that, inasmuch as when the legislature, in granting powers to municipal bodies, prescribes the manner in which they shall be exercised, the body must be limited to that mode, and can adopt no other, and that the legislature having authorized the city to exercise its power through ordinances, and to enforce them by fine, the right to exercise its powers by forfeiture can not be sustained. If the only means intended to be given to the city of enforcing these powers is by fine, then the position of counsel is correct. But is that the only means given? Evidently not, as the language is broader and more comprehensive.

"It will hardly be contended that to suppress groceries the city would be compelled to grant licenses, and only be allowed to fine the person to whom granted for a violation of the ordinances regulating the sale of liquors. It might, with the same reason, be insisted that the city could not refuse a license for such a purpose and take a bond, as the charter has authorized, conditioned that he should observe the ordinances on the subject, and have no other remedy than action on the bond. All know that this would not be suppression. To suppress must mean to prevent, and not to license or sanction the act to be suppressed. It would be a confusion of terms to say that a thing is suppressed, when it is protected, licensed and encouraged."

The mere fact that gasoline has been rationed indicates that an emergency exists and that the processes of the courts would be inadequate as a remedy.

I may add that the law writers who have discussed the powers of the administrative bodies created under authority of the Second War Powers Act apparently have not considered the regulations authorizing the revocation of licenses to procure or sell allocated materials as being outside the scope of the powers granted by Congress. 42 Col.Law Review (1170, 1177, 1178); 43 Col.Law Review, 213, 217; 55 Harvard Law Review, 427, 467, 468.

I have been furnished copies of the opinion of Judge Atwell in Wilemon v. Brown, et al., D.C.N.D.Tex., 51 F.Supp. 978, and that of Judge Bailey in B. Simon Hardware Co. v. Nelson, D.C. D.C., 52 F.

Supp. 474, which hold that the power of revocation in such a situation as this does not exist but I cannot agree with them. Rather, I find myself in agreement with Judge Lovett of the Southern District of Georgia, who, in an opinion filed November 15, 1943,[1] sustained a similar order of suspension.

In my opinion the plaintiff is not entitled to a temporary injunction as prayed.

---

[1] Perkins v. Brown et al., D.C., 53 F. Supp. 176.