**JACOBSON et al. v. BOWLES, Price Adm'r, et al.**

**Civil Action No. 956.**

District Court, N. D. Texas, Dallas Division.

Jan. 8, 1944.

J. M. Hoppenstein, of Dallas, Tex., for plaintiffs.

Amos J. Coffman and David B. Love, both of Dallas, Tex., and Geo. M. Austin, of Washington, D. C., for defendants.

ATWELL, District Judge.

The plaintiffs allege that they were engaged in the gasoline business at Longview, Gregg County, Texas. That in 1943 a six months' suspension of their business was decreed by an O. P. A. "Hearing Administrator" for alleged violation of a ration regulation. That they appealed from such order and that relief was denied and the order affirmed.

Having exhausted their administrative remedies, they seek court restraint.

An agreed preliminary injunction was entered and the cause set down on the merits for today. It is submitted upon a written stipulation plus a transcript of the testimony before the "Hearing Administrator," and on affidavits by the petitioners plus a bank statement of coupons deposited.

The witnesses not having been heard by the court, there has been little opportunity to use the ordinary methods of testing credibility, but, using the stipulation and the testimony, it may be safely stated that, a man by the name of Martin, who had a broken leg, appeared at the plaintiffs' place of business and represented that he needed gasoline that he might go for medical attention, and that seventy-five gallons were furnished him. Later, two investigators for the O. P. A. office appeared and Mrs. Jacobson, understanding that they were nephews of the cripple, allowed them to have eleven gallons.

The investigators deny that they represented that they were his nephews, but they

do say that Mrs. Jacobson's husband refused to let them have it when they first sought it, but that they later returned when she was there and secured it. The issue is slightly clouded here and I am unable to tell where the truth does actually lie. Mrs. Jacobson is not very well, being afflicted with asthma and nervousness.

Upon check by the investigators a shortage of some fourteen hundred gallons was discovered, but the coupons for that amount, or, approximately that amount, were in the hands of a sister-in-law who would gather the coupons and paste them on a sticky paper and take them to the bank every few days, so that I think we may safely assume that the shortage was satisfactorily covered.

Violence would probably not be done to the record if we find the plaintiffs were not exact in following the regulations to some slight degree.

The jurisdiction is agreed to insofar as the amount in controversy is concerned.

For this irregularity, the "Hearing Administrator" decreed a suspension of business for six months.

■ It is thought that the ration orders and regulations are in substantial compliance with constitutional authority. This was found in the case of Wilemon v. Brown, D.C., 51 F.Supp. 978. But it is seriously doubted whether there is any sufficient legal basis for the establishment of an "Hearing Administrator," such as assumes to function under these regulations.

A committee of the national House of Representatives, charged with the duty of inquiring into this identical matter, described it as "a new judicial process," and reported, on November 15, 1943, that it was "entirely invalid," citing the case of Wilemon v. Brown.

It is argued here that the order is remedial and not penal, but the transcript of the testimony shows that the "Hearing Administrator" said: "My intention would be to recommend a sentence that would permit him to stay in business but that would have a penalty." He then inquired as to the amount of sales and the business generally, and then decreed, "I think six months is low enough."

We cannot close our eyes to a proceeding of that sort. It is a taking of the citizen's property. It is being taken by an administrative, or executive officer who assumes to act as a court. Such assumption and action is not justified by either the authority given by the Congress, or by the President, or by the Constitution.

Since the entry of the Wilemon v. Brown judgment, there have been notable and able brethren in other portions of the country who have thought otherwise, as well as able and thoughtful brethren who have thought in expressions of harmony with that case. At the present time that case is in the breast of the Circuit Court of Appeals for this circuit.[1] It was argued sometime ago and a decision is expected shortly. Until the thought and conclusion in that case has been definitely pointed, this court shall continue to hold, if the facts justify, that such judgments are illegal and void.

A careful study of the exhibit which accompanies the agreed statement of facts, and which is known as "Transcript of Testimony," discloses that there are forty pages of questions and answers. It also contains the suggestions that were made to the "Hearing Administrator" by the O. P. A. representative, concerning the admission of proof. At least one of which is worth copying here, to-wit: "Your Honor, if the presiding officer deems that any material is itself of interest, the laws in equity do not prevail in this hearing and the presiding officer may admit it."

■ It also shows that government investigator Bryant represented to Mrs. Jacobson that: "Mr. Martin had given me the coupons and she said she would accept them." Martin is the man who was on crutches and represented that he needed gasoline to get to a place where he could get proper medical treatment. That, and the fact that the investigators were refused gasoline without coupons by Mrs. Jacobson's husband, tends to raise the question of entrapment. Of course, we realize that entrapment does not become a defense unless it is more than the ordinary testing of the citizen. To say the least, what happened here borders pretty close upon an impropriety.

Pretermitting, however, any equity based upon the activity of the investigators and the desire of a sick woman to help a sick and crippled customer, and coming directly

[1] Since this opinion was rendered Wilemon v. Brown has been reversed, 5 Cir., 139 F.2d 730. Certiorari application pending.

to the big question of allocation and the claimed correlative right to penalize, we must again call attention to the fact that allocation means, "assignment, allotment." It does not mean "confiscation," nor "the right to penalize or punish," nor "to take the property of the citizen," nor to enjoin.

The authority given by the Congress was that criminal prosecution and injunctive relief would be had through constitutional courts. There was and is no suggestion that a new court called "Hearing Administrator" was to be created, or that such officer should have the right, in a pure rationing or allocation procedure, to punish for what had already been done.

Not so very many months have passed since the decision of Wilemon v. Brown. At that time, two weeks' suspension was thought sufficient for a much larger violation. Now, the "Hearing Administrator" imposes six months' suspension.

The power to allocate exists as to bread. It has never been exercised, but it is inherent in the authority voted by the Congress. Bread is as necessary to the soldier as is gasoline. Bread is necessary to the civilian—even more necessary than is gasoline. If one may be deprived of the right to dispose of gasoline which is on hand and to secure any more for proper disposition to customers, then one could be deprived, under a like authority, of the right to get bread. The same argument, based upon war emergency and the necessity to conduct successfully, could be made with reference to bread as is made with reference to gasoline. The superlative degree of the illustration merely calls attention to the growth of a carelessly vested power, and that Caesar feeds upon liberties. That is the meat which makes it so strong. The liberties, upon which it feeds, belong to the citizen. As the feeding continues, the citizen grows weaker, and, eventually, too weak to exercise his right to destroy by his vote and influence, the bureau which has fattened at the expense of his freedom.

Hence it is that we seek refuge in the Constitution and in the acts of the Congress under that Constitution and look carefully for such rights as may be bestowed upon an executive or administrative bureau.

Because the order of suspension is issued by an authority unknown to either the Constitution, or congressional authority,

it is illegal and void, and restraint may be issued.

Permanent restraint may be granted as prayed, with a noted exception for the defendants.