BROWN, Administrator, Office of Price Administration, et al. v. WILEMON et al.

No. 10840.

Circuit Court of Appeals, Fifth Circuit.
Jan. 13, 1944.
Rehearing Denied March 3, 1944.

Thomas I. Emerson, Deputy Administrator for Enforcement, O. P. A., and Fleming James, Jr., Director, Litigation Division,

O. P. A., and Harry L. Shniderman, Atty., Appellate Section, O. P. A., all of Washington, D. C., W. B. Harrell, Regional Litigation Atty., O. P. A., and David B. Love, Regional Litigation Atty., O. P. A., both of Dallas, Tex., for appellants.

Howard Dailey, of Dallas, Tex., for appellees.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The appellees, plaintiffs below, are licensed operators of gasolene filling stations in Dallas, Texas. Under the allocation regulations of the Office of Price Administration they registered as distributors and undertook to make the required reports. On May 6, 1943, a hearing was set to ascertain whether because of violations of the rationing order 5C. they should be suspended from dealing in gasolene. The Hearing Commissioner found that appellees had during April sold some 4,000 gallons of gasolene on 1,063 rationing coupons six weeks before the coupons were usable; and he ordered that appellees "be prohibited from selling, transfering or dealing in gasolene for a period of two weeks". On appeal the Hearing Administrator confirmed the order, declining to consider whether the Hearing Commissioner had constitutional authority to make such suspension orders. Thereupon appellees applied to the District Court for an injunction on the ground that legislative power was being exercised in imposing punishments and penalties not authorized by Congress, and judicial power in trying the right of appellees to continue in business, in violation of Articles 1 and 3 of the Constitution. The District Court held that the suspension order was punitive and not remedial, and that Congress had vested no power in the President and his agencies to fix punishments or to adjudge them, and that the injunctive and penal remedies in the District Court provided in Section 205 of Title II of the Act of Jan. 30, 1942, 56 Stat. 33, 50 U.S.C.A.Appendix, § 925, are alone to be pursued. The injunction was granted. 51 F.Supp. 978. This appeal followed.

■ The District Courts have differed on the questions presented. Typical of the opposite view is another case in the Fifth Circuit, Perkins v. Brown, D.C., 53 F. Supp. 176. We think the case last cited takes the sounder position. The statutory authority for what has been done must be found in the following words: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in the shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense". Sect. 2(a) (2) of the Act of June 28, 1940, as amended by the Act of May 31, 1941, 55 Stat. 236, 50 U.S.C.A. Appendix, § 1152(a) (2). Section 2(a) (2) permits the President to act through such agency or officer as he may direct, "and in conformity with any rules or regulations which he may prescribe." The allocation of gasolene came to be vested in the Office of Price Administration, and ration order 5C (7 Fed. Reg. 9135) was issued whereby the gasolene allocated for use by civilian consumers was regulated through the issuance to them of ration coupon books. These coupons are to be taken up by the filling stations when gasolene is sold, and may not be honored before their due date. Section 1394.8302 of ration order 5C provides that any person who violates the ration order may "by administrative suspension order" be prohibited from receiving, selling, using or disposing of gasolene for such period as is deemed "necessary or appropriate in the public interest and to promote the national security". The suspension order, whether directed against the filling station operator or the consumer himself, thus professes to be an administrative order intended to promote the national security, rather than a penalty.

That it may so operate seems clear to us. The allocation of gasolene is first of all between the military and civilian users. That allocated to civilian users must also be rationed according to the fair needs of all and with reference to their contribution to the defense effort. The distribution to civilian consumers might have been made through government establishments which would have put all filling stations out of business for the period of rationing. Instead of doing that, the filling stations were required to register as distributors and to make reports from which the operation of rationing could be checked. Though

no license was issued, such was the effect of the arrangement; and by acceptance of it the filling station operators impliedly agreed to abide by the regulations. They became in effect the appointees of the government to assist in the administration of the rationing. If any of them should prove untrustworthy or non-cooperative, we think it a fair exercise of administrative power to withdraw from such, temporarily or permanently, the privilege of distributing the allocated and rationed material. That this was provided for by regulation in advance does not alter the essence of the matter. That a business loss will be caused, or more accurately the failure to make an anticipated business profit, is also not controlling. The true purpose must be held to be to protect the efficacy of rationing rather than to punish for past misdeeds.

■ By the act a wilful violation of the regulations is made a criminal offense punishable by fine and imprisonment. Also injunction is provided in some cases, the final effect of which is imprisonment for contempt in case of further wilful violation. The present case is not one of wilfulness but negligence. The Hearing Administrator explained his action thus: "The privilege of dealing in and distributing such a strategic and rationed commodity as gasolene in time of war can be accorded only to those who are both willing and able to comply with the rationing regulations * * *. Thus wilfulness is not a necessary element in establishing a violation of a ration order. The purpose of suspension order proceedings is to determine whether a respondent may continue to be entrusted with the privilege of dealing with rationed commodities without further limitations". The privilege in a proper case can be taken away altogether. A less drastic cautionary suspension is also within the limits of appropriate administration.

■ Punishment or penalty in America consists in taking life, liberty, or property. A suspension order takes neither. The dealer's personal liberty is untouched. Nothing that is really his is taken from him. His filling station is unmolested and may be used to sell things other than gasolene, and to service cars. Even his gasolene is not taken from him. He is prohibited for a brief period from distributing it or from getting any more. There is damage by the interruption of his business, but damnum absque injuria. His private interest has merely come into collision with a public interest, and has had to yield.

In the railroad business, it is of the utmost importance that enginemen be skillful and reliable. Their jobs are secured by union agreements, and suspension or dismissal commonly cannot be visited without a hearing. But although suspension or dismissal necessarily causes a financial loss, it has never been denied that such discipline is a legitimate exercise of railroad management and administration. It seems reasonable to us that a similar power be considered to vest in the Administrator in using the filling station operators to assist in the work of rationing. A suspension order which affects nothing but the rationed gasolene is a proper implementation of rationing, and was at once used without special legislative mention. It was not substituted or superseded by the punitive provisions later added to the act to stop wilful misconducts.

It is true that the Office of Price Administration, like many other administrative boards and commissions, has put forth a great mass of regulations which look like legislation, and has established an elaborate system of quasi courts. It is said thus to have established an imperium in imperio, and this has provoked adverse public comment. We confine ourselves to the case before us. We do not think a penalty has been ordained or adjudged in such a sense as to require the action of Congress and a court; but that observance of rationing rules may as a matter of administration be made "a condition" of participation in allocation, as mentioned in the Act, and that temporary suspension is a proper enforcement of the condition.

The judgment is reversed and the cause remanded with direction to dismiss the complaint.

Reversed.