**LA PORTE et al. v. BITKER, O. P. A.**
**District Director, et al.**
**Civil Action No. 1299.**

District Court, E. D. Wisconsin.

April 4, 1944.

Karon & Weinberg, of Milwaukee, Wis., for plaintiffs.

Fleming James, Jr., Director of Litigation Division, and Atwood Cranston, Sp. Litigation Atty., O. P. A., both of Washington, D. C., Lee K. Beznor, O. P. A. District Enforcement Atty., of Milwaukee, Wis., and John F. Manierre, O. P. A. Regional Enforcement Atty., of Chicago, Ill., for defendants.

DUFFY, District Judge.

This is an action for a permanent injunction to restrain defendants from enforcing a suspension order issued by the Office of Price Administration which would close plaintiffs' business for one year. The matter now before the court is plaintiffs' motion for an injunction pendente lite.

Plaintiffs LaPorte have been engaged for many years in the gasoline and oil business, operating a bulk station and three filling stations in Milwaukee. Plaintiff Szukalski owns and operates a filling station in Milwaukee. The defendants are various officials of the Office of Price Administration, hereafter referred to as O. P. A.

On August 6, 1943, plaintiffs were served with notices of hearing issued by the defendant Elson, Regional Attorney for O. P. A. at Chicago, charging plaintiffs with violations of rationing regulations, known as Ration Order 5C. These notices required plaintiffs to appear for a hearing at Milwaukee before defendant McFarland, hearing commissioner, or any other presiding officer designated by McFarland, to show cause why a suspension order should not be issued against plaintiffs prohibiting them from further engaging in the gasoline business or handling other rationed products. The hearing was held August 9th before one Allen, who had been designated by defendant McFarland to act as presiding officer.

Plaintiffs objected to the jurisdiction of O. P. A. to conduct the proceeding, which objection was overruled. The hearing continued for four days, during which Allen swore witnesses, ruled upon objections, passed upon exhibits, etc. Allen thereafter filed a report with McFarland recommending a suspension order against plaintiffs. O. P. A. attorneys objected that Allen's recommendations were too lenient. Plaintiffs filed objections to the report upon jurisdictional and other grounds. McFarland filed an opinion modifying Allen's "Findings and Conclusions" and issued a suspension order which suspended plaintiffs' right to deal in gasoline for one year. Reiterating their objection to the jurisdiction of O. P. A., plaintiffs appealed to the Hearing Administrator at Washington, D.

C., but he affirmed the suspension order and directed that it be enforced commencing December 15, 1943.

Although the charges against the plaintiffs arose largely from their contention that naphtha or "white gas" was not rationed, it is not here contended that the evidence received on the hearing is not sufficient to form a proper basis for the suspension order. Plaintiffs make their stand upon their vigorously asserted claim that O. P. A. had no jurisdiction or power to issue the suspension order. In the alternative, they raised the question of lack of due process because of the manner in which the hearing was conducted and the procedure by which the decision was made. The complaint directly challenges the power of O. P. A. to create its own court, staffed by its own employees. It also challenges the right of O. P. A. official McFarland to decide the case and issue the suspension order when another official presided at the hearing.

The Second War Powers Act, Sec. 2(a), 56 Stat. 176, 50 U.S.C.A.Appendix § 633, subdivision (2), provides: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material * * * the President may allocate such material * * * in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense." The act further provides in subsection (6) that the district courts of the United States shall have jurisdiction of violations of subsection (a) or any rule, regulation or order thereunder and of all civil actions under said subsection. The act further provides that a willful violation may be punished in criminal proceedings in the district courts. Subsection (8) provides: "The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe."

Plaintiffs contend that there is a wide difference between the authority in the President to allocate critical materials and the power to suspend a person's right to deal in such materials. They contend that the authority given to the courts to enforce penalties is exclusive, and that suspending the plaintiffs from business for one year was imposing a penalty.

The courts which have passed upon the authority of O. P. A. to issue suspension orders are divided in their conclusions. In Wilemon v. Brown, D.C.N.D.Tex., 51 F. Supp. 978, Judge Atwell held that the O. P. A. suspension order restraining retail dealers from making sales of gasoline for a period of two weeks was invalid as fixing a penalty, without delegation of such power by Congress. The same Judge reached a similar conclusion in Jacobson v. Bowles, 53 F.Supp. 532.

In Sims v. Talbert, D.C.E.D.S.C., 52 F. Supp. 688, Judge Timmerman held that the suspension order was in effect an injunction; that the jurisdiction conferred by the act on the courts impliedly, if not directly, denied such jurisdiction to the administrative agency; that even assuming the hearing commissioner had the power on proper showing to issue the suspension order, no proper showing was made.

In B. Simon Hardware Co. v. Nelson, D.C.D.C., 52 F.Supp. 474, Justice Bailey held that the War Production Board's suspension order was not an allotment under the Board's power to allocate materials, but was an unauthorized penalty for violations of the Board's regulations.

Conclusions to the contrary have been reached by Judge Lovett in Perkins v. Brown, D.C.S.D.Ga., 53 F.Supp. 176; by Judge Rifkind in Panteleo v. Brown, D.C. S.D.N.Y., 53 F.Supp. 209; by Judge Holly in Joliet Oil Corp. v. Brown, D.C.N.D. Ill., 55 F.Supp. 876; by Justice Bailey in L. P. Steuart & Bro., Inc., v. Bowles, D.C., 55 F.Supp. 336, which latter decision was affirmed on February 18, 1944, by the U. S. Court of Appeals for the District of Columbia. 140 F.2d 703. Furthermore, the decision in the Wilemon case, supra, has been reversed in Brown v. Wilemon, 5 Cir., 139 F.2d 730.

Several law writers who have discussed the powers of the administrative bodies created under the Second War Powers Act have apparently concluded that the revocation of licenses to procure or sell allocated materials are within the scope of the powers granted by Congress. 55 Harv. Law Review, 427, 467; 42 Col. Law Review, 1170, 1177; 43 Col. Law Review, 213, 217. To the contrary, see "The Challenge of the Administrative Process" by Dean Roscoe Pound in the March, 1944, issue of the American Bar Association Journal.

█ I am of the opinion that there was no unlawful or invalid delegation of power. The Second War Powers Act provided: "The President may allocate such (critical) material * * * in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate." It further provides: "The President may exercise any power, authority, or discretion conferred on him * * * through such department, agency, or officer of the Government as he may direct * * *."

No one disputes that gasoline is critical material in the conduct of the present war. Allocation, or rationing as it is more commonly called, has for its purpose, the use of vital war materials in the manner which will be most helpful to our war effort. It is extremely important that when a scarcity exists in such material, there should be an equitable distribution thereof. Rationing, or allocation, is absolutely essential to the successful prosecution of the war effort. In my opinion, Congress had the power to enact this legislation as an appropriate means to a permitted end under the War Powers (Article I, Section 8) of the Constitution. Congress expressly authorized the President to sub-delegate this power. See: Opp Cotton Mills v. Administrator of Wage and Hour Division of Department of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; Sunshine Anthracite Coal Co. v. Atkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263. In times of war such legislation must of necessity be expressed in broad terms.

The Court of Appeals for the Second Circuit recently held that the provisions of the Second War Powers Act, pursuant to which Ration Order 5C was issued, are not invalid as constituting an invalid delegation of power. United States v. Randall et al., 2 Cir., 140 F.2d 70. To the same effect, United States v. Maviglia et al., D. C., 52 F.Supp. 946.

A reading of the decisions of the Supreme Court handed down March 27, 1944, in Bowles v. Willingham et al., 64 S.Ct. 641, involving rent control under the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., and in the case of Yakus v. United States, 64 S.Ct. 660, involving price control under the same Act, confirms me in my opinion that there is no unconstitutional delegation of legislative power to the President or his delegatee under the act which we are here considering.

█ But plaintiffs insist that the power to allocate does not include the power to suspend their right to deal in gasoline. I must hold that such a narrow and limited interpretation of the word "allocate" is not justified.

The Supreme Court in the Willingham case, supra [64 S.Ct. 648], stated: "There would be no constitutional objection if Congress as a war emergency measure had itself fixed the maximum rents in these areas." So, too, Congress might have taken over the entire distribution of gasoline as a war emergency measure. Instead, Congress decided to utilize established private business outlets and authorized the President and his delegatee to allocate the supply available for civilian use. Filling station operators who operated under such conditions at least impliedly agreed to abide by the regulations. If any proved to be untrustworthy or refused to co-operate, it was a fair exercise of administrative authority to withdraw from such, for a reasonable period of time, the privilege of distributing the allocated material. "That a business loss will be caused, or more accurately the failure to make an anticipated business profit, is also not controlling. The true purpose must be held to be to protect the efficacy of rationing rather than to punish for past misdeeds." Brown v. Wilemon, 5 Cir., 139 F.2d 730, 732.

The fact that the suspension order has a penalizing effect is not controlling. The Circuit Court of Appeals for this Circuit has held that the suspension by the Secretary of Agriculture of a broker from trading privileges on contract grain markets because he violated certain regulations, was not primarily punishment for a past offense, but an exercise of power by the Secretary to assure a proper adherence to the provisions of the act. Nelson v. Secretary of Agriculture, 7 Cir., 133 F.2d 453. For similar rulings, see Board of Trade of City of Chicago v. Wallace, 7 Cir., 67 F. 2d 402; Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651; Wright v. Securities & Exchange Commission, 2 Cir., 112 F.2d 89. All of the orders involved in the cases last cited had a penalizing effect, yet the courts regarded them as remedial orders. I conclude, therefore, that the Second War Powers Act did not unlawfully delegate either legislative or judicial power.

■ The claim of plaintiffs that the suspension order was a denial of due process of law has given me some concern. I recognize that there is no exact definition of due process of law. By that term we visualize an orderly procedure in which the citizen has an adequate opportunity to be heard and to defend. The constitutional guarantee of due process of law is intended to protect the individual against the arbitrary exercise of governmental power and to secure equal protection of the law to all. 16 C.J.S. Constitutional Law, § 569, p. 1150.

Proceedings leading to a suspension order are governed by "Procedural Regulation 4", which was promulgated by O. P. A. on February 4, 1943. An examination of this regulation discloses that the rules of evidence prevailing in courts of law or equity shall not be controlling (Sec. 1300.156 (2) ); the hearing may be conducted by a presiding officer (Sec. 1300.154); but it is required that the hearing commissioner shall determine whether the suspension order shall issue (Section 1300.165 (a). The hearing commissioner in this case did not see the witnesses or hear the evidence. Further provisions for the hearing provide that the respondent may be represented by counsel of his own choosing; that opportunity be given for cross-examination of witnesses; that all hearings be public; and that a stenographic report of all hearings be taken. The regulation further provides that the presiding officer is to report findings of fact and conclusions of law and recommendations to the hearing commissioner. Thereafter briefs may be filed and the hearing commissioner then determines whether a suspension order shall issue. Provision is also made for an appeal from the determination of the hearing commissioner to a hearing administrator who is located in Washington, D. C. In this case the plaintiffs have exhausted their administrative remedies.

Plaintiffs make no contention that they did not receive notice and that they did not have full opportunity to be heard. They do complain because all of the officials before whom they were heard were employees of O. P. A., and that no provision was made for an independent judicial review.

In a recent case under the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 301 et seq., the Supreme Court said: "Even if there were, as the petitioner argues, a constitutional requirement that judicial review must be available to test the validity of the decision of the local [draft] board, it is certain that Congress was not required to provide for judicial intervention before final acceptance of an individual for national service." Falbo v. U. S., 320 U.S. 549, 554, 64 S.Ct. 346, 348.

Congress authorized the President to allocate critical material to such an extent as he may deem it necessary or appropriate in the public interest. This delegation was made in time of war. The authority was given to the President who was both the Chief Magistrate of this nation and Commander in Chief of the Armed Forces. This is a war emergency with which we are dealing. As stated heretofore, the entire gasoline supply of the country might have been taken over by the government.

■ The courts have recognized that what might amount to a denial of due process of law in one situation would not be such denial in other circumstances. The liberty guaranteed by the due process clause includes the right to offer an article of commerce for sale only so long as the doing so does not come within the restrictive jurisdiction of the police power. 16 C.J.S. Constitutional Law, § 668, p. 1416. If the right of government is recognized to restrict the operation of business that may interfere with public health, morals, comfort and safety, the same or greater right must be reserved to government in time of war. Businesses which are or may become public nuisances may be prohibited or abated in times of peace, without the denial of due process of law. A business clothed with a public interest is likewise subject to regulation. And where the police power is encountered, the fact that the regulation may destroy the business is not sufficient of itself to render it invalid. San Francisco Shopping News Co. v. City of South San Francisco, 9 Cir., 69 F.2d 879.

In considering a suspension order issued by O. P. A., the court in Perkins v. Brown, supra, 53 F.Supp. at page 179, said: "A distributor of gasoline may be likened to a licensee whose license runs during good behavior." In Panteleo v. Brown, supra, 53 F.Supp. at page 210, the court said: "Were the suspension order called a reduction of ration, it would more clearly appear that it was an inevitable incident of

rationing. * * * The mere fact that the Office of Price Administration has surrounded suspension orders with the terminology, procedure and form of quasi-judicial proceedings does not change their inherent character."

In Brown v. Wilemon, supra, 139 F.2d at page 732, the Circuit Court of Appeals said: * * * "observance of rationing rules may, as a matter of administration be made 'a condition' of participation in allocation, as mentioned in the Act, and that temporary suspension is a proper enforcement of the condition." Finding myself in agreement with the three statements last quoted, I conclude that the demands of due process have been met and that the motion for a temporary injunction must be denied.