**MARKALL v. BOWLES, Adm'r, Office of Price Administration, et al.**

No. 23548–C.

District Court, N. D. California, S. D.

Sept. 5, 1944.

Harold H. Price, of San Francisco, Cal., for plaintiff.

Thomas C. Ryan and W. Dunlap Cannon, Jr., Office of Price Administration, both of San Francisco, Cal., for defendants.

GOODMAN, District Judge.

Plaintiff, a merchant engaged in the business of buying and selling used machinery and equipment and maintaining a business and establishment at San Francisco, California, commenced this action against Bowles, Administrator of the Office of Price Administration, Baird, Regional Administrator and the members of War Price and Rationing Board 83—11—12 of the Office of Price Administration for an injunction restraining the defendants from enforcing a suspension order issued by the Board and affirmed on review by a hearing officer of the Price Administration. In response to an order to show cause why a temporary injunction should not issue, counsel for the defendants appeared and a stipulation as to facts was executed and filed. It was agreed in open court that upon the stipulated facts and the arguments and briefs made and filed the court should determine whether an injunction should issue.

The record shows that on April 11, 1944, War Price and Rationing Board 83—11—12 issued to plaintiff a supplementary gasoline mileage ration for plaintiff's Cadillac automobile, consisting of twenty-eight "C" coupons of the value of five gallons of gasoline each and valid for use by plaintiff until June 29, 1944. By his application for the supplemental gas ration, plaintiff represented that the use of his automobile in the inspection and purchase and sale of mining equipment and machine tools in different parts of the United States was essential to the war effort. Within ten days after April 11, 1944, plaintiff consumed all of the gasoline so allowed him and thereupon applied to the Board for an additional ration amounting to 600 gallons for the purpose of making a trip to Moline, Kansas, to dismantle a rock crushing plant there located. The Board denied this application on May 24, 1944, on the ground that alternative means of transportation were sufficient. On May 26, 1944, the Board, having discovered that plaintiff had taken a trip in his automobile to Little Rock, Ark., cited plaintiff to appear before it for a hearing on the charge that he had violated the provisions of ration order 5–C, 7 Fed.Reg. 9135, in that he had put gasoline into his car without surrendering lawful coupons therefor, § 1394.8167; 7 Fed.Reg. 9787; that he had used gasoline rations for a purpose other than that for which such rations could be obtained, § 1394.8177; 7 Fed.Reg. 10338; that he had obtained gasoline in violation of both the tire and automobile ration order § 1394.-8173; 8 Fed.Reg. 2353. At the hearing before the Board, plaintiff admitted that an unnamed soldier had given him seventy-five "C" coupons with which he had procured the gasoline for the trip to and from Little Rock, Ark. Plaintiff further admitted that he made no inquiry as to the source of the coupons. The Board thereupon made an order suspending plaintiff's gasoline ration for "so long as gasoline shall be rationed." In accordance with ration order 5–C, § 1394.8105, plaintiff appealed from the decision of the Board to the District Director of the O.P.A. as special hearing officer. Thereafter, on June 27, 1944, the special hearing officer conducted a hearing at which the plaintiff and his attorney were present, and after hearing, the special hearing officer affirmed the decision of the Board. Thereafter, on July 6, 1944, plaintiff, pursuant to Section 1394.8106a of ration order 5–C, made application for a gasoline ration in lieu of that suspended by the Board and the hearing officer; said application was denied on July 18, 1944, by the District Director. This action followed by the filing of the complaint herein on August 2, 1944.

The power of the ration board to issue suspension orders is not questioned, as indeed it cannot be since the decision of the Supreme Court in Steuart & Bro., Inc., v. Bowles, 322 U.S. 398, 64 S.Ct. 1097. The sole question there presented to the court, which it decided affirmatively, was: Under the Second War Powers Act, § 301, 56 Stat. 178, 50 U.S.C.A.Appendix § 633, did power vest in the President, or in those to whom he delegated his authority, to issue suspension orders? The ruling of the court was based upon the reasoning that the power to allocate essential materials necessarily includes the power to suspend the allocations of those who acquire or distribute materials in violation of the rationing regulations. By the Stabilization Extension Act of 1944, Section 108(e), Public Law 383, 78th Congress 2nd Session, 50 U.S.C.A.Appendix, § 925 (g), adopted subsequent to the decision in Steuart v. Bowles, Congress confirmed the power of the Price Administrator to issue

suspension orders, if not directly, at least by implication.

The findings of the Board were not attacked in Steuart v. Bowles, supra, as they were in Automobile Sales Co. v. Bowles, D.C. Ohio, 58 F.Supp. 469, on the ground that they were not supported by substantial evidence. Neither are the findings so attacked here, nor could they be because of plaintiff's admission at the hearing of the infraction charged.

 Also, it is important to note that it was conceded in Steuart v. Bowles, supra, as it is here, that there may be judicial review of suspension orders in the event of abuse of power in the issuance thereof. Stabilization Act of 1944, Section 108(e), Public Law 383, 78th Congress 2nd Session, supra. Furthermore, under general principles of jurisprudence the right of appeal to the courts in the case of administrative action of an arbitrary or capricious nature is established. Bradley v. Richmond, 227 U.S. 477, 483, 33 S.Ct. 318, 57 L.Ed. 603.

"The law watches the exercise of discretionary power with a jealous eye." III Kent, Commentaries, 182.

The single question here presented is:

Is the order suspending plaintiff's gasoline ration for "so long as gasoline shall be rationed" so beyond the necessities of the case and so irrelevant to the rationale of rationing as to be capricious and arbitrary and therefore subject to judicial correction as an abuse of power?

First of all we must consider the nature and limits of the "discretion" vested in the Board by ration order 5–C.

By § 1394.8105(a) (1) of ration order 5–C " * * * the Board after hearing, may in its discretion, revoke and suspend his ration or rations, in whole or in part * * * and deny him a ration or rations, in whole or in part, for *such period as it may deem appropriate in the public interest.*" (Emphasis supplied) 8 F.R. 372, 1202, 6178.

Discretion, as applied to the field of law, is defined in the Standard Dictionary as follows: "The act or the liberty of deciding according to the principles of justice and one's ideas of what is right and proper under the circumstances without wilfulness or favor."

 Discretion as applied to the authority of a public functionary has been held to mean the power or right to act officially according to what appears just and proper under the circumstances. Murray v. Buell, 74 Wis. 14, at page 18, 41 N.W. 1010. The nature and extent of discretionary power when delegated to an administrative agency is clearly described in Fox Film Corp. v. Trumbull, D.C., 7 F.2d 715, at page 727, as follows:

"The use of the words 'within the discretion of the commission' does not import absolute and capricious discretion. It is an administrative discretion, and it requires him (the Commissioner) to satisfy himself that such a state of facts exists * * *. In deciding that question, he necessarily exercises discretion and judgment. It can be decided in no other way. And in doing so he does not have unlimited license to act, irrespective of restraint. He must act in conformity with the intent and provisions of the statute." (Interpolation supplied.)

 So here the discretion vested in the Board must be exercised in the light of the purposes of the statute and the regulations promulgated pursuant thereto.

"The true purpose (of the Regulation) must be held to be to protect the efficacy of rationing rather than to punish for past misdeeds." Brown v. Wilemon, 5 Cir., 139 F.2d 730, 732. (Interpolation supplied.)

" 'The purpose of suspension order proceedings is to determine whether a respondent may continue to be entrusted with the privilege of dealing with rationed commodities without further limitations.' The privilege in a *proper case* can be taken away altogether. A less drastic cautionary suspension (approved in the cited case) is also within the limits of appropriate administration." Brown v. Wilemon, 5 Cir., 139 F.2d 730. (Emphasis and interpolations supplied.)

When "discretion" is abused, discretion becomes arbitrary. Decision then rests alone upon one's will and not upon a process of reasoning nor upon considered judgment. United States v. Lotempio, D.C., 58 F.2d 358, 360. Otherwise stated, it means acting according to one's own will or pleasure, capriciously and without adequate determining principles. Fox Film Corp. v. Trumbull, supra.

Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89, cited by defendants, wherein the court reviewed an order of the Securities and Exchange Com-

mission expelling a broker from stock exchange membership, is properly distinguishable here because of the wide difference both in the facts and in the statutory objective between the cited and the instant cause.

With these criteria in mind let us examine the suspension Order against the background of the facts of the case.

The plaintiff was engaged in business activities reasonably proximate to certain phases of the war effort. To this the Board had already given recognition by granting him supplemental ration allowances. A suspension for a definite period of time— calculated on some reasonable basis with relation both to the amount of gasoline wrongfully diverted and to plaintiff's needs would have been well within the limits of the Board's discretion.

It is freely admitted that the duration of gasoline rationing is indefinite; it may continue for a month or a year or years. Circumstances not now capable of admeasurement may require the continuance of rationing after the termination of the present war. It may be modified or made more stringent. Businesses, industries and individuals may, because of changing circumstances, be excepted from its requirements.

When the Board in effect decreed: "no more gasoline for you until the end of rationing," it indicated an intention to disregard reason and relevancy. Its decision then became capricious and arbitrary. Relevancy to allocation was ignored and the Board entered the domain of personal sanctions—a field reserved to Congress, and, by Congressional mandate, to the Courts.

We are not called upon to decide, whether under any circumstances, an order suspending the ration privilege for the duration would be within the power of the Board.

Our decision is limited to the power of the Board to issue the order in question under the facts of this case.

A serious infraction was committed by the plaintiff. If, however, he is to be punished therefor, the procedure must be under the appropriate sections of the law, e. g. Section 2(a) (5), Second War Powers Act, Pub.Law 507, 77th Cong. 2d Sess., 50 U.S.C.A.Appendix, § 633. It is relevant to point out that the suspension order prevents the plaintiff from reasonably pursuing a substantial portion of his business. While the national interest justifies deprivation of individual claims to expected profits (Steuart v. Bowles, supra) nevertheless the deprivation of the rationed material must be reasonably related to allocation and not be penal in nature.

An injunction may issue as prayed.