**COUNTRY GARDEN MARKET, Inc., v. BOWLES.**

No. 21805.

District Court of the United States for the District of Columbia.

Jan. 24, 1944.

Albert Brick and Frank L. Ball, both of Washington, D. C., for plaintiff.

Fleming James, Jr., of Washington, D. C., for defendant.

DARR, District Judge (sitting by designation).

The plaintiff owns and operates retail food markets. The defendant is the official administering the war rationing program, as it relates to the retail trade. The plaintiff seeks an injunction whereby the defendant would be restrained from carrying into effect an order made by defendant prohibiting the plaintiff for a period of fifteen days from receiving for sale or selling certain foods.

On June 29 and 30, 1943, acting under appropriate regulations and pursuant to notice, a Hearing Commissioner representing the defendant conducted a hearing to ascertain whether plaintiff had violated rationing orders pertaining to its sale of meat. The plaintiff appeared and made defense. The Hearing Commissioner found that the plaintiff had violated Rationing Order No. 16, by selling and by offering to sell at reduced point values meat which was not in imminent danger of spoilage, by not posting a sign which complied with the regulation and by not acting in good faith as required by the regulations. Thereupon the Hearing Commissioner entered an order suspending the right of the plaintiff for a period of ninety days from dealing in foods covered by Ration Order No. 16, but providing that after fifteen days the further execution of the suspension order would be stayed indefinitely, on condition that plaintiff thereafter complied with the regulations of the

rationing program. The plaintiff appealed from this order to the Hearing Administrator, who affirmed it.

The plaintiff claims that the enforcement of the suspension order would cause it great financial loss in anticipated profits and in damage to the good will of its business.

The relief sought is based on the ground that the defendant is undertaking to exercise legislative power in providing for punishments and penalties, and undertaking to exercise judicial power in adjudging a penalty against the plaintiff after a trial, in violation of Arts. I and III of the Constitution. It is unnecessary to consider other violations of Constitutional provisions advanced as grounds for relief, for a determination as to the two mentioned will settle all.

The plaintiff does not attack the constitutionality of the pertinent legislation but claims that defendant's conduct, being unconstitutional, was not within the scope of the legislation.

If the suspension order is punitive, the defendant has violated the Constitution and gone beyond the scope of the legislation; but if the suspension order is remedial the defendant's actions are constitutional and are within the terms of the legislation.

The defendant's authority for his actions must be found within the provisions of the Second War Powers Act of 1942, Sec. 2(a) (2), 50 U.S.C.A. Appendix § 633, which is as follows: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Sec. 2(a) (8) provides that the President may delegate all the authority given him in the Act to an agency under such directions as he may desire to give.

The very broad general powers of allocating material given to the President by the Congress finds constitutional permission in the right of Congress to declare war. There follows from the right to declare war the tremendous power in the Congress to make all provisions and regulations needful for a successful prosecution and termination of the war. Such legislation could not be constitutionally enacted in peace time. It is the failure to appreciate this situation, perhaps, that causes many citizens, including the plaintiff, to become agitated by the belief that their constitutional rights are being invaded by governmental intervention.

This Act, among other things, gives to the President, or his delegates the authority to take control for the purpose of dividing all war-scarce commodities. It is quite obvious that this plan is for the purpose of arranging whereby hardships incident to the war shall fall equally upon all concerned.

A plan was fallen upon whereby such foods were to be divided between the armed forces and civilians, and then among the individual civilians. The retail merchants were permitted to continue to buy and sell these foods for a profit as distributors for the President, or his delegate, but under restrictions and regulations.

The right to contract to buy and sell is not an absolute right. It is subject to governmental regulation, as for example the recognized right to provide that buying and selling may not be carried on in certain areas, etc. In fact, if the right to buy and sell were absolute, there could be no rationing at all.

It seems clear that the administration of the rationing program would include the power to provide for necessary restrictions. One restriction upon a distributor such as the plaintiff is that a violation of rationing regulations would result in a suspension of the right to buy and sell for a stated period. This is a method to insure future observance of regulations by the violator as well as tending to make for equality in the business of all distributors. The result of this is to more effectively and efficiently carry on the rationing program.

If the loss of business is a penalty, then the rationing program must fail, for many dealers might be able to show that they could have made much more money if their buying and selling had not been limited.

By administrative action, and many times after hearings, citizens are placed by compulsion in the armed forces under the Selective Service Act, 50 U.S.C.A. Appendix § 301 et seq. Doubtless this results in substantial financial loss to many. No one has claimed this to be a penalty. Not only

has the citizen placed in the armed forces by administrative action had financial loss, but he has been required to lose his personal liberty and to jeopardize his life. Why should a merchant be heard to complain that he is suffering a legal penalty for a relatively insignificant hardship of like tenor?

The suspension order is remedial and not punitive and the plaintiff is not entitled to injunctive relief. Brown, Adm'r, v. Wilemon et al., 5 Cir., 139 F.2d 730, decided Jan. 13, 1944.

The fact that the Act provides for a penalty for wilful violation thereof and provides for injunction, the violation of which would result in penalties, would not affect the situation. These provisions would have efficacy if the suspension order is not observed.

The contentions made by the plaintiff that the notice for the hearing before the Hearing Commissioner was not sufficient and that there was no substantial evidence upon which to base the suspension order are without merit.

The complaint is dismissed. Order accordingly.