**L. P. STEUART & BRO., Inc., v. BOWLES, Price Adm'r, et al.**

No. 8677.

United States Court of Appeals
District of Columbia

Argued Feb. 4, 1944.

Decided Feb. 18, 1944.

Writ of Certiorari Granted April 3, 1944.

See 64 S.Ct. 849.

Mr. Renah F. Camalier, of Washington, D. C., for appellant. Mr. Francis C. Brooke, of Washington, D. C., also entered an appearance for appellant.

Mr. Fleming James, Jr.,* Director, Litigation Division, Office of Price Administration, of Washington, D. C., with whom Messrs. Thomas I. Emerson,* Deputy Administrator for Enforcement, David London,* Chief, Appellate Branch, Harry L. Shniderman,* Attorney, John L. Laskey, District Enforcement Attorney, and Carl W. Berueffy,* Enforcement Attorney, of Boulder, Colo., all of the Office of Price Administration, all of Washington, D. C., were on the brief, for appellees.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from the District Court's denial of an injunction to restrain the Office of Price Administration from enforcing a suspension order against appellant.

Appellant is, among other things, a large retail dealer in fuel oil. The Hearing Administrator of the Office of Price Administration found after a full hearing that appellant in violation of rationing regulations accepted great quantities of fuel oil from a supplier without surrendering valid rationing evidence, transferred great quantities to customers without receiving valid rationing evidence, and failed to keep required records. The suspension order forbids appellant to transfer fuel oil to customers or to receive delivery of fuel oil for resale, between January 15 and December 31, 1944; but with a proviso that if appellant furnishes a verified list

---

* Appeared by authority of the Price Administrator. **7** Fed.Reg. 7910.

of its customers during the pre-rationing year (October 21, 1941, to October 21, 1942), and surrenders all void or expired rationing evidence in its possession, it may transfer oil to any consumer whom it served during that year and may receive deliveries for that purpose. The order provides that it may be modified if modification becomes necessary in order to meet the needs of the area. It also provides for an accounting by appellant of its fuel-oil transactions.

Appellant does not deny that the evidence supported the findings of the Hearing Administrator. The complaint and answer raise no issues of fact. The District Court rendered summary judgment dismissing the complaint, but continued a temporary restraining order pending this appeal.

■ Appellant contends that there is no statutory authority for the suspension order. We think the District Court was right in finding such authority in the Second War Powers Act, 1942, which provides in § 2(a) (2): "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."[1] The suspension order is within the President's authority to "allocate."[2] As the District Court ob-

served, the power to allocate includes the power to re-allocate, or to put an end to an allocation. All allocation has positive and negative aspects. What is allocated to some is allocated away from others. An order is equally an allocation whether it prescribes what A shall receive or, as in the case of this suspension order, what B shall not receive. The language quoted from the Second War Powers Act is substantially the same as that in a previous act[3] under which a number of suspension orders were issued. The practice of issuing such orders was brought to the attention of Congress when the Second War Powers Act was under consideration.[4]

■■ Appellant urges that the suspension order is penal. If this were true it would not be conclusive, since Congress may confer upon administrative officers authority to impose penalties.[5] But appellant contends that Congress has not in fact conferred penal authority upon the Office of Price Administration. For the purpose of the argument only, we accept this contention. It does not aid appellant, for the suspension order is remedial and not penal.

A penalty is a punishment, an injury inflicted for punitive purposes. Appellant's suspension is undoubtedly an injury, but is not imposed for punitive purposes. It is a direct means to a fairer distribution of the limited supply of oil in accordance with the allocation program. Appellant had shown a strong inclination to disregard that program.[6] It had not merely violated the program but had informed the Hearing Administrator, in effect, that it

[1] 56 Stat. 176, 178, 50 U.S.C.A. § 633.

The President has delegated to the Office of Price Administration, and it has exercised, the authority to allocate fuel oil. By Executive Order 9125, April 7, 1942, the President conferred his authority over allocation under § 2(a) (2) of the Second War Powers Act on the War Production Board and confirmed War Production Board Directive No. 1, 7 Fed.Reg. 562, which lodged in the Office of Price Administration the Board's allocation power under the earlier acts. 7 Fed.Reg. 2719, 2720. By Supplementary Directive 1-0, the War Production Board expressly delegated to the Office of Price Administration authority over the rationing of fuel oil. 7 Fed.Reg. 8418. The Office of Price Administration then issued Ration Order 11, which deals in detail with this subject. 7 Fed.Reg. 8480. The Office of Price Administration dele-

gated to its Hearing Administrator and Hearing Commissioners its incidental authority to issue suspension orders. General Order 46, 8 Fed.Reg. 1771. It also adopted procedural regulations governing their issue. Procedural Regulation 4, 8 Fed.Reg. 1744.

[2] Brown, Administrator, v. Wilemon, 5 Cir., 139 F.2d 730.

[3] Act of May 31, 1941, 55 Stat. 236, which amended the Act of June 28, 1940, 54 Stat. 676.

[4] Perkins v. Brown, D.C.,S.D.Ga., 53 F.Supp. 176.

[5] Lloyd Sabaudo Societa v. Elting, Collector of Customs, 287 U.S. 329, 334, 53 S.Ct. 167, 77 L.Ed. 341.

[6] Appellant's violations of the program were in themselves ample evidence of an inclination to disregard it.

"conceived its first duty to be the supplying of its customers with oil and that conformity with the requirements of the rationing system was subordinate thereto." [7] This comes to saying that appellant deliberately determined, as a matter of general policy, to meet what it considered the needs of its customers whether or not they had rationing evidence. Since violation of the law was willful, statutory penalties of fine and imprisonment might have been invoked. But instead of seeking to punish, the government sought to prevent. The suspension order is intended to limit, and does limit, appellant's temptation and opportunity to violate the rationing program. The order therefore tends, in a most direct way, to promote the program. No doubt it tends also to promote the program in an indirect way by indicating that violation may not pay. But an incidental minatory effect does not turn a remedial order into a penal one. The fact that the suspension order protects the public directly, by allocating oil away from a dealer who is disposed to violate the rationing program and toward other dealers, sharply distinguishes it from fines and penalties.

Hawker v. New York [8] illustrates the same general principle. That case involved a New York statute which forbade the practice of medicine to physicians who had committed felonies. A physician contended that it increased his punishment for an offense which he had committed before its passage, and that it was therefore, as to him, ex post facto and invalid. The Supreme Court rejected his contention. The Court held that the statute did not impose punishment for the former offense but merely prescribed a qualification for the practice of medicine, since its immediate purpose was to protect the public.[9]

■ The suspension order might well have been absolute. Instead, it is qualified so as to permit appellant to serve as many of its old customers as it can reach. The qualification cannot harm appellant and does not vitiate the order. Perhaps an arbitrary proviso might vitiate an otherwise valid order, but the actual proviso is not arbitrary. It is related to the rationing program. It will place appellant in a position similar to, though not so good as, that in which it stood when it embarked on its illegal course. Dealings with a limited group of known customers can be more easily conformed to the law, can be more easily policed, and offer less temptation to obtain business by disregarding the law, than unlimited dealings with the public.

■ Appellant urges that the order will limit the sources from which government agencies may buy oil, and will require appellant to discriminate between would-be customers, contrary to earlier orders of general application. If there were a conflict between orders, presumably the later would control. But no order provides that government agencies may buy from dealers who are not authorized to sell, or that dealers must sell to customers who are not authorized to buy. Even if appellant's contentions to the contrary were sound they would not aid appellant, since litigants "to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law." [10]

Affirmed.

---

[7] The language is the Hearing Administrator's. Appellant has not questioned its accuracy.

[8] 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002.

[9] Similarly, suspension of members of stock exchanges and the like, for the protection of the public, is not penal. Wright v. Securities & Exchange Commission, 2 Cir., 112 F.2d 89; Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651; Nelson v. Secretary of Agriculture, 7 Cir., 133 F.2d 453.

[10] Perkins, Secretary of Labor, v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108.