GALLAGHER'S STEAK HOUSE, Inc., v.
BOWLES, Administrator, O.P.A., et al.
No. 318.

Circuit Court of Appeals, Second Circuit.
May 2, 1944.

Olvany, Eisner & Donnelly, of Washington, D. C. (James F. Donnelly and Alvin R. Cowan, both of New York City, of counsel), for appellant.

Thomas I. Emerson, Deputy Administrator for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and Harry L. Shniderman, Atty., O. P. A., all of Washington, D. C., Irvin C. Rutter, Regional Enforcement Executive, of New York City, and John D. Masterton, Chief Enforcement Atty., O. P. A., of Newark, N. J., for appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This appeal involves the validity of a rationing order made by the Office of Price Administration and of an order subsequently made by the same authority which is called a suspension order.

The appellant, a New York corporation, operates a restaurant in the City of New York where it features the serving of steaks. It is within the class known as institutional users of food to whom was allocated food which was made subject to allocation by virtue of § 2(a) (2) of the Act of June 28, 1940, 54 Stat. 676, as amended by the Priorities and Allocations Act of May 31, 1941, 55 Stat. 236, 50 U.S.C.A. Appendix § 1152(a) (2), and by title III of the Second War Powers Act of 1942, 56 Stat. 176, 50 U.S.C.A. Appendix § 631 et seq., and the regulations issued thereunder. This food included, inter alia, meats, fats, and oils which fall within the provisions of Ration Order No. 16 and General Ration Order No. 5. The allocation was made in accordance with the procedure established therefor and upon the application of the appellant showing the information required as to its business done in the base month of December, 1942.

The amount of such food which was allocated to the appellant was translated into terms of ration points. A designated number of such points per month was allotted to the appellant by its local War Price and Rationing Board, computed in accordance with an established formula upon the facts disclosed as to the base month. Later this number was increased, upon the further application of the appellant, by taking into consideration the number of meals it had served to its employees during the base month and the number of patrons to whom it had then served beverages without food. The allotment made on the last mentioned basis was considerably smaller than it would have been had the figures supplied by the appellant been accepted as correct by the local board in making the computation. The appellant duly appealed from the order of allotment, in accordance with Procedural Regulation No. 9, 7 F.R. 8796, to the District Director and then to the Regional Administrator and finally to the Office of Price Administration in Washington. The order was affirmed each time, the last affirmance being by order of the Chief of the Institutional User Branch of the Office of Price Administration on December 7, 1943, which was after this suit was brought.

Although the appellant now insists that this allotment order was invalid, both because made by an agency to whom the power to act had been unlawfully delegated and because it acted arbitrarily, we consider neither contention sustainable. The delegation of power was lawful, as we have recently held in United States v. Randall, 2 Cir., 140 F.2d 70. See, also, O'Neal v. United States, 6 Cir., 140 F.2d 908. The appellant did not allege in its complaint that the allotment was incorrect, nor does this record contain the record of the hearings and action of the administrative agency. The court below found that the appellant failed to prove that the allotment was not as large as it should have been and this record does not show the contrary. The order making the final allotment of points must, accordingly, be held correct and valid. Rickard v. Thompson, 9 Cir., 72 F.2d 807; Carter Oil Co. v. Norman, 7 Cir., 131 F.2d 451. Compare, Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260.

The remaining question is whether the administrative agency had the power to modify the order upon due proof that the appellant had not limited its purchase and receipt of the commodities to the amounts it was entitled by its allotment of ration points to receive upon surrender of those points. The fact that the appellant did not surrender ration points as required is plain and undisputed. By June 28, 1943, it was in arrears to the extent of about 200,000 such points and could not, as it well knew, make up the deficit except by using for that purpose points it would receive in the

future. Such use would curtail pro tanto the amount of such food it could buy for current use and would seriously impair its ability to continue in business.

It had been able to get the food for the ration point payment of which it was in arrears to this extent because the regulations permitted an extension of credit on ration point payments within the ability of the appellant to pay at the time of purchase or within a limited time thereafter, but the appellant had not kept its purchases and receipts within this limit.

Being advised of the situation, the appellee Bowles, who is the Administrator, Office of Price Administration, caused charges to be filed on June 26, 1943, against the appellant for violations of Ration Orders Nos. 5, 8 and 16. Hearings as provided by Procedural Regulation No. 4 of the agency were conducted upon due notice to the appellant, which appeared and was heard. It was found, and it is now undisputed, that as of August 27, 1943, the appellant had fallen still further behind in terms of ration point indebtedness and then had a deficit of 234,495 points. That was true also as of the date of the hearing, September 17, 1943. The only way, of course, in which the appellant could pay this debt was by using points which it would receive under its allotment from month to month in the future, for that was the only way it could lawfully obtain the currency to do so. And it was self-evident that to the extent it used for additional purchases the points it would obtain it would continue to acquire foods which it was not yet entitled to receive under the allocation.

Under such circumstances the so-called suspension order was made on September 20, 1943, by appellee Chambers as Chief Hearing Commissioner, Office of Price Administration, Region II. It provided that

"(a) Respondent, as an * * * institutional user * * * during this suspension,

"1. Shall not acquire or receive, directly or indirectly, rationed commodities as defined in Ration Order No. 16.

"2. Shall keep posted, plainly visible to the public, at its place of business any notice hereof furnished by the Office of Price Administration.

"(b) It is also ordered that no person shall in any manner, directly or indirectly, during this suspension, transfer or deliver rationed commodities as defined in Ration Order No. 16 to respondent.

"(c) The period of this suspension shall become effective on September 25, 1943, and shall remain in effect so long as respondent shall continue in default for any part of point indebtedness adjudged and until the respondent has given satisfactory proof to the Office of Price Administration that the said point indebtedness has been fully paid."

The notice furnished to the appellant to be posted as ordered was to the effect that by order of the Office of Price Administration the appellant had been prohibited during the period from September 25, 1943, until further notice, from buying, selling or in any manner using meats, canned fish, canned milk, butter, cheese, oleomargarine, fats and oils, as defined in Ration Order No. 16.

The appellant appealed from this order by the method provided in the regulations of the Office of Price Administration, and it was duly affirmed after the notice to be posted had been modified to conform to the terms of the order by omitting any prohibition against selling and using such rationed commodities, and it was made effective as of December 1, 1943. It has been stayed during the pendency of this suit. Though final administrative action was not taken until after the suit was brought, it was taken before the hearing in the District Court and no question has been raised as to whether the suit was premature.

In determining whether this so-called suspension order was a valid exercise of power delegated to the administrative agency we shall not undertake to decide whether § 41 of General Ration Order No. 8, under which the order was made, is in all respects valid. The order which the appellant has tried to have enjoined prohibits not the sale or use of commodities it had on hand but only its direct or indirect acquisition or receipt, during the time the order is in effect, of rationed commodities as defined in Ration Order No. 16.

In effect what we have to decide is whether a ration order like the one here made may for cause shown be modified prospectively, after it has become effective, by the agency which made it. The appellant contends that the power to ration was not delegated and that even if it had been it did not comprise the power to make the so-called suspension order.

The pertinent section of the Second War Powers Act, 56 Stat. 176, provides that: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

■ The contention that rationing is unauthorized grows out of the fact that the word "ration" was not used in the statute and is based on the argument that the power to allocate does not include what has been called rationing in the administrative orders and regulations. We think the plaintiff has misconceived what power was delegated, by letting an overemphasis upon the label attached to what was done by the administrative agency obscure the substance of it. The delegation of the power to allocate included the power to distribute, to assign, to allot. Webster's New International Dictionary. It has been the law at least since McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, that the lawful delegation of a power carries with it the authority to do whatever is reasonable and appropriate properly to effectuate the power. What has been called rationing is no more than that. Institutional users of food like the appellant were first given the opportunity to show what amount of the commodities to be allocated they had used in their business during a base period, and when that figure was determined the same proportion of that amount was "rationed" to one as to all. This is, to each was allocated an amount of food in terms of ration points which had a value in common units like pounds or quarts by which food is customarily measured. Thus a constant was established on the basis of past use which was applicable for the current allotment period to each particular user but a flexible element was provided in that the value of ration points could be changed from time to time as available supplies of commodities fluctuated, and such changes would apply to all users alike. This was plainly an equitable way to allocate available food to civilians, but it would not remain equitable unless the number of points allocated to each individual user did in fact restrict him to the amount of rationed food which he could lawfully receive.

One way to make sure that no "spending" of points could take place in excess of the amount allotted would have been to require users to obtain and pay over their points on or before the delivery of the commodities to them. But this was not feasible with respect to users in all instances, and so it was provided in § 105 of Ration Order No. 16 that a transferee of rationed food to whom the transfer was made by delivery might give up the required points not later than seven days after delivery. It was provided, however, that a transferee may not accept such a delivery "unless he has points on hand (excluding points not yet surrendered for foods bought or acquired) or in his ration bank account (excluding the amounts of ration checks issued which have not yet been cleared) equal to the point value of the foods transferred." Thus it was made possible for institutional users lawfully to obtain deliveries of rationed food without simultaneously paying for it in points. And likewise a user was enabled either intentionally or unintentionally to acquire rationed food in excess of his ability to pay in points, though he could not in either case do so without violating a ration order.

■ It is true that willful violations were by statute made punishable as crimes in the District Courts and that compliance with ration orders could be enforced civilly by means of injunction, as will later appear. These remedies are exclusive, as we shall show, for the enforcement of a ration order according to its terms, but the courts cannot change the terms of an existing ration order and their exclusive jurisdiction to enforce an order does not curtail the power of the administrative agency to vary the terms of one. That exclusive jurisdiction does not make the ration order itself immutable. When it was made clear to the administrative agency that the means which had been used for the allocation of food did not accomplish the intended result it had not only the power but the duty to endeavor to make the allocation work out better in the future by altering the terms of the ration order as experience had shown was necessary to achieve the desired end. It was bound to adapt its orders to conditions as the latter varied, and if abuses developed to try to prevent their continuance in the future, leaving past violations and violators to be dealt with in the courts.

■ The so-called suspension order here involved was merely an attempt to correct such a situation. It did not, in the opinion of a majority of the court, require the appellant to do anything by way of retribution for any past acts or offenses. It was only an order of re-allocation. L. P. Steuart & Bro. v. Bowles, App.D.C., 140 F.2d 703. The name "suspension order" is a bit misleading in that ration point income is not suspended and neither is ration point payment. The appellant remains entitled to acquire and use the same over-all amount of food that it was entitled to receive before the so-called suspension order went into effect. It has failed to conform its rate of use to the established rate of supply, and, whether imprudently or otherwise, has already used up some food which was in effect allocated to it for future use. The result of its conduct in that respect has been the modification of a privilege, which may be more burdensome to it than any penalty which could be lawfully imposed for past conduct, but that does not make such action penal. Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002.

■ The order, whatever it is called, merely earmarks the appellant's future point income for a particular use, provided it be used at all. At least that much is a necessary concomitant of the power to allocate. Being an appropriate means to make allocation effective, the order in this respect was a lawful exercise of the authority delegated to the agency which made it. Compare, Brown v. Wilemon, 5 Cir., 139 F.2d 730; L. P. Steuart & Bro. v. Bowles, supra; Perkins v. Brown, D. C., 53 F.Supp. 176.

■ We agree that the administrative agency has no power to punish merely for violations of the statute or of its allocation orders, or of its rules or regulations. Jurisdiction of acts which the statute makes criminal is conferred upon the District Courts in § 2(a) (6) of the Second War Powers Act, and in the same statute such courts are given jurisdiction "to enforce any liability or duty created by, or to enjoin any violation of, this subsection (a) or any rule, regulation, order, or subpoena thereunder * * *." Such jurisdiction is exclusive. Decorative Stone Co. v. Building Trades Council, 2 Cir., 23 F.2d 426, certiorari denied 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005. That is to say, while the allocation order remains unchanged,

remedies and penalties are to be sought in the District Courts, if at all. And that is true also with respect to a violation of the so-called suspension order. Any civil remedy by way of enforcement of a right or duty created or any criminal prosecution for a crime which had been or might be committed was left to be pursued in the District Courts. The plaintiff was put under no compulsion, except an economic one, to use for any purpose the points it received. That the force of circumstances might compel their use in the limited way permitted and thus might be coercive is not conclusive on the question of the agency's power to impose such a limitation. Hawker v. New York, supra; A. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L. Ed. 1109; Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. Those who must or who elect to use food which is allocated have to bear the burden which a just and equitable allocation entails.

■ My brothers are also of the opinion that the part of the order which requires the appellant to post the prescribed notice in its premises is a valid exercise of power lawfully delegated to the administrative agency. They consider it to be a reasonable means of imparting information of an important governmental action and as not operating as a prohibition or injunction against third persons; they reserve consideration of the effect of such a prohibition if and when made.

I cannot agree and will state briefly why I am unable to do so. That requirement seems to me to be not a reasonably necessary provision for the allocation of commodities but one designed solely to serve notice by such publication upon the public and especially upon those who otherwise would, or notwithstanding do, patronize appellant's restaurant. Its apparent purpose is both to punish the appellant in an unauthorized manner for past acts or omissions and to implement that other part of the order which forbids the public generally to transfer or deliver rationed commodities to the appellant during the time what is called the suspension order is in effect. If it is valid, it subjects the appellant to civil or criminal action in the courts upon its failure to post the notice, whether the appellant uses the ration points it will receive in the future to pay off its point indebtedness and thereafter to acquire additional rationed commodities, or does without them

and makes no use of its points at all. Presumably it was intended to subject any person to civil or criminal liability or both, as a statute might, in the event that the person should deliver rationed commodities to the appellant while the order is in effect. As to the last mentioned provision we need at present take no action; no offending member of the public is a party to this suit.

But I think the appellant is entitled to relief. Making its premises a billboard on which the public is warned that deliveries of rationed goods have been forbidden to it until it has made up what has been called a point deficit and has given the agency satisfactory proof to that effect plays no reasonable and necessary, and therefore lawful, part in allocation per se. To make changes in an allocation order which experience has shown necessary to conserve food by allocating it fairly among users is a thing apart from the public branding of a user who has incurred the displeasure of the allocating agency. Having made a new order of allocation which restricts the appellant's use of points more than did the original, the agency must seek enforcement, if necessary, in the courts and not act as complainant, judge, jury and executioner when, and as, it sees fit. Only the power to make allocation orders has been lawfully delegated to this agency. Rules, regulations or orders which go beyond that are not authorized by the statute, which is the source of all the power possessed by the appellees. I would see to it that the order was modified accordingly.

Order affirmed.