**K. & J. MARKETS, Inc., v. BOWLES, Adm'r, Office of Price Administration, et al.**
**Civil Action No. 3216.**

District Court, D. New Jersey.

Sept. 30, 1944.

Morris H. Cohn and Charles E. Cohn, both of Newark, N. J., for K. & J. Markets, Inc., complainant.

Nathan L. Jacobs, Chief Attorney, Office of Price Administration, of Newark, N.J., and William Sherman Greene, Jr., Enforcement Atty., Office of Price Administration, of New York City, for defendants.

MEANEY, District Judge.

This is an equity suit for an injunction prohibiting the defendants from enforcing an order of suspension issued against the complainant.

On June 22, 1943, at a hearing before an acting Hearing Commissioner of the Office of Price Administration (hereinafter called The O. P. A.), complainant was found guilty of violating Ration Order No. 8, Section 2.10, and Ration Order No. 16, Section 20.1(m), and the order of suspension, subsequently modified by the Hearing Administrator, was issued. The suspension order affects four of complainant's stores, and its operation has been stayed by the Hearing Administrator pending the outcome of the instant litigation.

The issue herein is a narrow one, as contemplated by the reply memorandum of the complainant, wherein it is stated:

"Complainant is in complete agreement with O. P. A. as to what the issue is and emphasizes that the question of regularity of procedure or of errors committed by the Hearing Commissioner or Hearing Administrator is not here an issue. Com-

plainant confines its complaint in this court merely upon the issue of whether or not the real defendant, O. P. A., as an administrative agency of the Federal Government, has any power, legislative or otherwise, to set up 'courts' within the agency to try and punish alleged violators of its regulations or orders and whether, if it has the power to set up 'courts' said agency through said courts, has the power to issue suspension orders".

The question as to whether or not the O. P. A. has the right to issue suspension orders is no longer open, it having been definitively answered in the affirmative by Mr. Justice Douglas speaking for the United States Supreme Court in the recent case of L. F. Steuart & Bro., Inc. v. Bowles, Adm'r, 64 S.Ct. 1097, affirming 78 U.S.App.D.C. 350, 140 F.2d 703. In that case a suspension order to run for the duration of the Second War Powers Act, 50 U.S.C.A.Appendix, § 631 et seq., was issued against a dealer in fuel oil because of violations of the rationing regulations, and the dealer challenged the propriety of the order on the ground that it was a punishment or penalty imposed by the Office of Price Administration without statutory authority to do so. In answer to that contention, the Court said, at page 1100 of 64 S.Ct.:

"We agree that it is for Congress to prescribe the penalties for the laws which it writes. It would transcend both the judicial and the administrative function to make additions to those which Congress has placed behind a statute. (Citing cases) Hence we would have no difficulty in agreeing with petitioner's contention if the issue were whether a suspension order could be used as a means of punishment of an offender. But that statement of the question is a distortion of the issue presented on this record. * * * in restricting petitioner's quota the Office of Price Administration was doing no more than protecting a community against distribution which measured by rationing standards was inequitable, unfair, and inefficient. If the power to 'allocate' did not embrace that power it would be feeble power indeed."

Complainant in its brief relied rather heavily on the case of Wilemon v. Brown, D.C., 51 F.Supp. 978. That case has now been reversed by the United States Circuit Court of Appeals for the 5th Circuit, 139 F.2d 730, and the United States Su-

preme Court on May 22, 1944 denied certiorari, Wilemon v. Bowles, 64 S.Ct. 1151. The Circuit Court, speaking through Judge Sibley, said at page 732 of 139 F.2d:

"Punishment or penalty in America consists in taking life, liberty, or property. A suspension order takes neither. The dealer's personal liberty is untouched. Nothing that is really his is taken from him. * * * He is prohibited for a brief period from distributing it (in that case, gasoline) or from getting any more. There is damage by the interruption of his business, but damnum absque injuria. His private interest has merely come into collision with a public interest, and has had to yield."

■ It is thus clear that the O. P. A. has the right to issue suspension orders and it necessarily follows that the O. P. A. has the right to set up Hearing Commissioners, referred to by the complainant herein as "courts", in order intelligently and fairly to administer this power of suspension without doing violence to the due-process clause of the United States Constitution Amend. 5. Such a proposition is so fundamental as to require no further discussion here; complainant's thesis that the O. P. A. has no power to set up the machinery for determining the factual situation upon which suspension may be predicated must therefore fall.

There is to be considered a further contention of complainant that there has been unlawful re-delegation of power vested in the President by the Congress. The Second War Powers Act gives to the President the power to allocate, and the right to delegate that power to an administrative agency. The President did so delegate that power to the War Production Board, and that Board, in turn, redelegated a certain portion of that power to the Office of Price Administration.

■ Since the decision of the United States Supreme Court in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, there can no longer be any doubt as to the constitutionality of the original delegation of power from Congress to the President.

■ The subdelegation of the President's power to the O. P. A. has been repeatedly upheld, and this Court thinks rightly so. See United States v. Randall, 2 Cir., 140 F.2d 70; Gallagher's Steak House, Inc., v. Bowles, 2 Cir., 142 F.2d 530; United States v. Wright, D.C., 48 F.Supp 687.

The sole remaining question is whether there is a distinction between the violation of ration regulations as to allocation and violation of price fixing orders, such as would negative the application of these considerations to price fixing; whether the application of suspension regulations to the price fixing violator must be held to be imposition of a penalty rather than the exercise of a remedial function, in an attempt to secure equalization of the burden of war time economy.

The purpose of allocation of quantities of commodities is to do away with inequalities which might exist between localities and individuals, due to difficulties of transportation or production.

The purpose of price fixing is to prevent inflation and to maintain a reasonable balance between the price of commodities and the buying or purchasing power of the general public, very largely reflected in its earning power.

Does the resultant disturbance of such balance bring the violator within the scope of the authority of the O. P. A. to issue a suspension order? Does violation of prices fixed by the O. P. A. constitute inequitable, unfair, wasteful and inefficient conduct such as existed as a basis for the determination of the Supreme Court in the case of L. P. Steuart & Bro., Inc., v. Bowles referred to hereinbefore?

■ I am of the opinion that both of these questions must be answered in the affirmative. As has been said in the case of Country Garden Market, Inc., v. Bowles, Adm'r et al., 57 F.Supp. 301, in a memorandum opinion filed by Justice Leslie Darr of the United States District Court for the District of Columbia:

"The right to contract to buy and sell is not an absolute right. It is subject to governmental regulation, as for example the recognized right to provide that buying and selling may not be carried on in certain areas, etc. In fact, if the right to buy and sell were absolute, there could be no rationing at all."

The provisions of the Second War Powers Act of 1942, § 2 (a) (2), 50 U.S.C.A.Appendix, § 633, provide as follows:

"Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the Presi-

dent may allocate such material or facilities in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

The authority herein granted has been delegated to the Administrator of the Office of Price Administration and it would seem logical that under such authority the Price Administrator may establish, as a condition of allocation, a ceiling price. Violation of this condition may therefore be subject to remedial sanctions administratively imposed, for precisely the same reasons as those set forth in the Steuart case. Price fixing, as arrived at by the Administrator of the Office of Price Administration is, like the creation of ration coupon requirement, incident to allocation. Certainly, it would seem that such conduct might well be denounced as "inequitable, unfair, wasteful and inefficient conduct".

The fact that the Act contemplates the possible imposition of penalties, as well as providing inferentially for the application of remedial sanctions, in nowise alters the propositions herein set forth.

Under these circumstances, the plaintiff is not entitled to injunctive relief and the complaint is dismissed.

By virtue of the provisions of section 205(f) (2) of the Emergency Price Control Act of 1942, as amended by Act June 30th, 1944, § 108(d), 50 U.S.C.A.Appendix, § 925(f) (2), the conclusions herein arrived at as to the right of the Administrator of the Office of Price Administration to issue suspensions for violation of price ceilings would be inapplicable to situations subsequent to that date.