## UNITED STATES v. FINK.

Civ. No. 231-46.

District Court, D. Nebraska, Omaha Division.

Dec. 16, 1946.

has now been submitted to the court for final decision as to whether the plaintiff is entitled to a permanent injunction.

The parties have stipulated that since on or about August 1, 1946, the defendant has been the legal title owner of Lot 1, Block 15, Nye-Hawthorne Addition to Fremont, Nebraska, at the southwest corner of 16th and Keene Avenue in Fremont, Nebraska.

The court makes the following special findings of fact:

1. The civilian Production Administration, acting under authority delegated by Executive Orders 9024 of January 16, 1942 (7 F.R. 329), 9040 of January 24, 1942 (7 F.R. 527), 9125 of April 7, 1942 (7 F.R. 2719) and 9638 of October 4, 1945, 50 U.S. C.A.Appendix, § 601 note (10 F.R. 1291), issued and promulgated Veterans' Housing Program Order No. 1 on March 26, 1946, (11 F.R. 3190), and this Order, as supplemented and amended, has continued in full force and effect up to the present time.

2. The defendant is twenty-eight years old, married and the father of two children. He is not a veteran of World War II. The defendant and his family are temporarily living in the home of his wife's parents at Valley, Nebraska; the defendant and his family having been evicted from a house which they were renting when it was purchased by a veteran.

3. On or about August 10, 1946, the defendant, without authorization from the Civilian Production Administration or the Federal Housing Administration, commenced constructing a five-room house on Lot 1, Block 15, Nye-Hawthorne Addition to Fremont, Nebraska, at the southwest corner of 16th and Keene Avenue, in Fremont, Nebraska. The defendant intends to occupy this house as a home for himself and his family.

4. Between August 15, 1946, and the date of the trial of this action (November 25, 1946), the defendant purchased building materials costing approximately $2,300 for use in constructing the house, and nearly all of these materials have now been incorporated into its structure. Between September 14, 1946, and October 1, 1946, a contractor rendered services valued at $654 in connection with construction of the house.

Thomas C. Quinlan, Asst. U. S. Atty. for District of Nebraska, of Omaha, Neb., for plaintiff.

Charles H. Yost, of Fremont, Neb., for defendant.

DONOHOE, District Judge.

This is an action by the United States of America against Eldon Fink to enjoin the defendant from proceeding with the construction of a house in alleged violation of the provisions of Veterans' Housing Program Order No. 1 of the Civilian Production Administration.

A temporary restraining order and order to show cause were issued without notice to the defendant. Evidence on the merits

5. All of the materials were purchased in the open market, and from established business concerns, at times when these materials were available for purchase by the general public. None of the materials, when purchased by the defendant, were critical materials or then held subject to priority controls.

6. The defendant, at the time of the trial, had no additional materials on hand except tar paper, which he intends to use for covering the outside of the house.

## Opinion

It will be convenient to first briefly note certain salient matters appearing in the evidence, and to then consider the law and its application.

The evidence establishes that the defendant, after Veterans' Housing Program Order No. 1 (sometimes referred to herein as V.H.P.-1) became effective, lawfully acquired and owned certain building materials costing approximately $2,300, which he purchased from dealers at times when these materials were non-critical and unrestricted and could be bought by the general public without priority assistance. Testimony of the dealer, uncontradicted in evidence for the government, shows that the lumber purchased by the defendant was non-critical and not subject to regulations requiring 80% of it to be retained indefinitely for priority orders. And it appears from the dealer's testimony that during the period of time in which the lumber was sold to the defendant this dealer had the same type of lumber available for purchase by veterans, and that no veteran desiring to purchase such lumber was turned down by the dealer. Similar testimony was given by the dealer from whom the defendant purchased ready-mixed concrete and concrete blocks.

Paragraph (a) of Veterans' Housing Program Order No. 1 states: "(a) What this order does. In order to carry out the Veterans' Emergency Housing Program, this order forbids the beginning of construction and repair work on buildings and certain other structures without specific authorization under paragraph (h) of this section, with the exception of certain small jobs and other work covered by paragraphs (d), (e) and (f). The restrictions of the order ap-

ply whether or not the materials needed are on hand or are available without priorities assistance."

Paragraph (d) establishes exemptions for small jobs, and, in so far as is now material, provides:

"(d) Exemption for small jobs. (1) This order does not restrict a construction, repair, alteration or installation job, the cost of which does not exceed the allowance given below for the particular kind of structure involved:

"(i) $400.00 for a house or other structure (such as a garage) on residential property designed for occupancy of five families or less. This allowance also applies to farmhouses and other housing accommodations on farms, except bunkhouses and other accommodations for transitory farm laborers."

Paragraphs (e) and (f) cover certain other exemptions, none of which are relevant here, and paragraph (h) sets forth the procedure to be followed in making application for authorization to begin work otherwise prohibited by the Order.

The issue is whether V.H.P.-1 imposes a valid restriction upon the defendant prohibiting him from now using his non-critical building materials to construct a house costing over $400 for himself and family, when the defendant is not a veteran and has not obtained authorization from the Civilian Production Administration or the Federal Housing Administration sanctioning construction of the house. In other words, is an owner of private property in the form of building materials prevented from exercising an inherent right to use his property in building his own house, irrespective of whether that property is critical or non-critical material, and regardless of whether it was lawfully or unlawfully acquired?

It is material to inquire into and examine the authority for the issuance of V.H.P.-1.

The authority, duties and powers of the Civilian Production Administration stem from Section 2 (a) of the Act of June 28, 1940, 54 Stats. 676, entitled "An Act to expedite national defense, and for other purposes", as amended by the Act of May 31, 1941, 55 Stats. 236, and by Title III of the Second War Powers Act of March 27, 1942,

56 Stats. 177, as amended and extended by the Act of December 20, 1944, 58 Stats. 827, and by the Act of December 28, 1945, Public Law 270—79th Congress, first session, and the Act of June 29, 1946, Public Law 475—79th Congress, second session, 50 U.S.C.A.Appendix, § 1152(a).

Section 2(a) (2) of Title III of the Second War Powers Act provides: "Whenever the President is satisfied that the fulfilment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Section 2(a) (8) of Title III of the Second War Powers Act provides: "(8) The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe."

Under the power thus conferred upon him, the President established the War Production Board, and defined its powers and duties by Executive Order No. 9024 of January 16, 1942. Additional functions and duties were conferred upon the Board and defined by Executive Order No. 9040 of January 24, 1942, and by Executive Order No. 9125 of April 7, 1942. Under Executive Order No. 9638 of October 4, 1945, the President created the Civilian Production Administration and transferred to it the functions and powers of the War Production Board.

■■ That Congress, by the previously quoted provisions of Title III of the Second War Powers Act, intended to and did make a valid general delegation to the President of authority and power to allocate, ration and control scarce and critical materials upon conditions which he deemed "Necessary or appropriate in the public interest and to promote the national defense" may not be doubted. Steuart & Bro., Inc., v.

Bowles, 322 U.S. 398, 64 S.Ct. 1097, 88 L. Ed. 1350; Shreveport Engraving Co., Inc., v. United States, 5 Cir., 143 F.2d 222; O'Neal v. United States, 6 Cir., 140 F.2d 908; Gallagher's Steak House, Inc., v. Bowles, 2 Cir., 142 F.2d 530. And the President could exercise this power through the War Production Board or the Civilian Production Administration, as provided by Executive Orders Nos. 9024, 9040, 9125 and 9638. Shreveport Engraving Co., Inc., v. United States, supra; O'Neal v. United States, supra; United States v. Beit Bros., D.C.Conn., 50 F.Supp. 590. But a source of authority to prohibit an owner of private property from making an otherwise lawful use of that property when it has not been declared critical or placed upon some priority or allocation basis seems to be lacking.

■ The court considers that V.H.P.-1 is in the nature of a proceeding in rem; that is, it is aimed at property and its use. Before exercising control over that use, the property must be constructively taken over by some affirmative action of the Civilian Production Administration, or other appropriate governmental agency declaring that the property is scarce and critical, and finding that its acquisition and use must be regulated. In the absence of such declaration or finding, there is no authority for an order controlling the use of private property.

The materials involved in the instant case being free from governmental control, and having been lawfully acquired, the court concludes that the government has failed to make a case entitling it to the relief now sought.

The defendant has attacked the constitutionality of V.H.P.-1 as applied to him, but the court finds that it is unnecessary to consider this question.

During the course of the trial, the government interposed objections to certain testimony of the dealers showing that the materials were not subject to priority control when purchased by the defendant. These objections were overruled for the time being, and this ruling now stands.

Brief comment upon certain cases cited by the Government is in order. The

Shreveport Engraving Co., Inc., case, upon which the government relies, is not in point. The court in that case sustained regulations of the War Production Board placing restrictions upon the use of copper in the hands of an owner. But copper was a critical material and had been so declared. The line of authority exemplified by cases such as United States v. Elade Realty Corp., D.C.N.Y., 66 F.Supp. 630, does not apply in the case now under consideration. These cases merely hold that a contractor, who has received priority assistance in obtaining critical materials for the construction of houses, is bound by his agreement that the sale price of a house shall not exceed a certain sum.

### Conclusions of Law

The defendant, as an owner of private property in the form of non-critical and unrestricted building materials which were lawfully acquired, is not prohibited from using these materials to construct a house for himself and his family by reason of the provisions of Veterans' Housing Program Order No. 1. The defendant does not come within the provisions of this Order, and is not thereby restricted from using such materials for the shelter and protection of his family.