## CAMP et al. v. RECREATION BOARD FOR DISTRICT OF COLUMBIA et al.

### Civ. A. No. 3582–51.

United States District Court
District of Columbia.

April 10, 1952.

Frank D. Reeves, Leroy H. McKinney, George B. Parks, Washington, D. C., for plaintiffs.

Vernon E. West, Corp. Counsel, Oliver Gasch, Milton D. Korman, Asst. Corp. Counsel, Washington, D. C., for defendants

members of Recreation Board, members of Board of Com'rs of District of Columbia, members of Board of Education, and Superintendent of Recreation, District of Columbia.

Holmes Baldridge, Asst. Atty. Gen., Charles M. Irelan, U. S. Atty., Edward H. Hickey and Irving Malchman, Dept. of Justice Attys., Washington, D. C., for defendants Secretary of the Interior and Director, National Park Service, Interior Department.

PINE, District Judge.

This action challenges the validity of segregation in public playgrounds in the District of Columbia. The plaintiffs are infant Negro residents of the District. The defendants are members of the Recreation Board,[1] the Superintendent of Recreation, the members of the Board of Commissioners, and the members of the Board of Education (hereinafter referred to as District defendants), the Secretary of the Interior and the Director of the National Park Service (hereinafter referred to as Interior defendants).

The District defendants have moved to dismiss on the ground that the complaint, when considered with the exhibits, fails to state a claim upon which relief can be granted, or in the alternative, for summary judgment. The Interior defendants have answered and thereafter moved for judgment on the pleadings or in the alternative for summary judgment on the same ground. These motions are now before me for decision, and there appears to be no genuine issue as to any material fact.

The playgrounds involved in this action are known as the Wheatley School and Trinidad playgrounds located in the northeast section of the District. They are now closed, but have been operated in the past during the summer months by the Recreation Board and have been designated exclusively for white residents. Although alleging inequality of playground facilities, plaintiffs at the hearing disavowed any such contention, and there is no factual support therefor.

The primary question for decision, therefore, is whether the practice, *as such,* of designating these playgrounds for white residents only is invalid.

The Recreation Board, which has operated the playgrounds, was created by Act of Congress approved April 29, 1942.[2] By this Act, Congress created an agency to consist of seven members, namely, a representative of the Board of Commissioners of the District selected by that Board, a representative of the Board of Education selected by that Board, the Superintendent of the National Capital Parks ex officio, and four others who shall have been residents of the District for five years immediately preceding their selection, appointed by the Commissioners of the District, Art. I, Sec. 1. The Act granted the Board "power and authority" to conduct a comprehensive program of public recreation in certain recreation centers, including playgrounds and "other recreational facilities which may be agreed upon between the Board and the agencies having jurisdiction over such facilities." Art. II, Sec. 3. It provided that "The respective facilities of the United States, the District of Columbia, and the Board of Education shall, by the agreement of the respective agencies of the Government having control of such facilities, be made available to the Board." Art. II, Sec. 2. It also provided that the Board "shall determine all questions of general policy relating to public recreation" in the District of Columbia, Art. II, Sec. 1, and transferred to the Board all the functions of the Community Center and Playgrounds Department then under the joint control of the Board of Commissioners and the Board of Education. Art. III, Sec. 1.

Playgrounds theretofore operated by the Community Center and Playgrounds Department had been conducted for many years on a segregated basis and were transferred to the Recreation Board as segregated areas. Furthermore, the Act creat-

---

1. One member (Edward J. Kelly) has not been served with process and is not before the Court.

2. Sec. 8–201, 202, D.C.Code 1940, Supp. VII, January 3, 1949, 56 Stat. 261.

ing the Board provided that the public properties to be utilized by the Board shall include those designated by the National Capital Park and Planning Commission in accordance with a comprehensive plan as suitable units of the District recreational system. Art. II, Sec. 3. The comprehensive plan depicted separate facilities and areas for white and Negro residents.

The Board in the exercise of its authority and duty to determine all questions of policy has continued generally the practice of segregation, except that in 1949 it agreed with the National Park Service to operate on a nonsegregated basis certain recreational activities in areas, such as Rock Creek and other parks, under the control of the National Park Service and not including the playgrounds here involved, deleted from its regulations all use of the words white and Negro and the provisions requiring a rigid policy of segregation at the District playgrounds, and adopted a "Policy," providing that the "Board will make every possible and realistic effort toward the removal of racial segregation in public recreation in such sequence and at such rate of progression as may be consistent with the public interest, public order, and effective administration."

█ Clearly the Board has statutory jurisdiction to determine all questions of policy in respect of playgrounds under its control, and the ultimate question presented resolves itself into a determination of whether its practice as above set forth is constitutional. This would appear to be answered in the affirmative by the well-known and often-cited decision of the Supreme Court in the case of Plessy v. Ferguson, 1896, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, and the many cases following it, all holding that constitutional invalidity does not arise from the fact of separation alone, but only when there is inequality of treatment. So far as public playgrounds are concerned, the application of this doctrine thereto recently has been examined by the United States District Court for the District of Maryland in Boyer v. Garrett, 1949, 88 F.Supp. 353, 355, which is identical with the case at bar, in that, as here, no contention was made that

the facilities were not equal, there was no statutory requirement of segregation, and the Baltimore Board of Recreation was empowered to make rules and regulations. In its decision therein the Court, in an opinion by Judge W. Calvin Chesnut, held that the "proper policy, that is, whether segregation should be required or not, is for the legislative department of the State or for the executive departments operating under legislative authority." Further, the Court quoted from University of Maryland v. Murray, 1935, 169 Md. 478, 182 A. 590, 595, 103 A.L.R. 706, that "Equality of treatment does not require that privileges be provided members of the two races in the same place", and relied on a statement of the Court of Appeals of Maryland in Durkee v. Murphy, 1942, 181 Md. 259, 265, 29 A.2d 253, 256 (involving segregation of white and Negro players on municipal golf courses), in part as follows: "And these provisions must, we conclude, be construed to vest in the Board the power to assign the golf courses to the use of the one race and the other in an effort to avoid any conflict which might arise from racial antipathies, for that is a common need to be faced in regulation of public facilities in Maryland, and must be implied in any delegation of power to control and regulate. There can be no question that, unreasonable as such antipathies may be, they are prominent sources of conflict, and are always to be reckoned with. Many statutory provisions recognize this need, and the fact needs no illustration. 'Separation of the races is normal treatment in this state.' Williams v. Zimmerman, 172 Md. 563, 567, 192 A. 353, 355. No additional ordinance was required therefore to authorize the Board to apply this normal treatment; the authority would be an implied incident of the power expressly given."

The Court of Appeals for the Fourth Circuit affirmed the District Court in Boyer v. Garrett, 4 Cir., 1950, 183 F.2d 582, and in its opinion held as follows:

"The District Court dismissed the complaint on the authority of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.ed. 256; and the principal argument made on appeal is that the

authority of Plessy v. Ferguson has been so weakened by subsequent decisions that we should no longer consider it as binding. We do not think, however, that we are at liberty thus to disregard a decision of the Supreme Court which that court has not seen fit to overrule and which it expressly refrained from reexamining, although urged to do so, in the very recent case of Sweatt v. Painter, [339 U.S. 629], 70 S.Ct. 848, [94 L.Ed. 1114]. It is for the Supreme Court, not us, to overrule its decisions or to hold them outmoded."

These opinions are apposite, and I follow them as a correct statement of the law. I do not find, as contended by plaintiffs, anything to the contrary in Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149; Rice v. Arnold, 340 U.S. 848, 71 S.Ct. 77, 95 L.Ed. 621; or Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187.

 Under these circumstances, and bearing in mind that a large proportion of the recreational activities of the District are conducted upon school properties, that Congress has by law required separation of the races in the schools, and that the constitutionality of such separation has been sustained by the United States Court of Appeals for this circuit,[3] I reach the conclusion that the practice complained of is constitutional, and that the attack made upon it by plaintiffs cannot be sustained. Nor do I find merit in the contention that this practice contravenes the Civil Rights Act[4] or the United Nations Charter,[5] as contended by plaintiffs.

This would appear to dispose of the case except for the fact that plaintiffs have prayed for other relief, namely that the court decree that the Interior Department has jurisdiction over the Trinidad Playground and that they be given injunctive relief and be awarded damages.

 So far as the first-mentioned prayer is concerned, that comes about by reason of the fact that there is a dispute between the Recreation Board and the Department of the Interior as to which has jurisdiction over the Trinidad Playground[6]; and the plaintiffs ask for such a decree because it is the policy of the Interior Department defendants to operate all areas under their jurisdiction without regard to race, and if such a decree were granted, the Trinidad Playground would be placed on a non-segregated basis.

It appears from an Act of Congress approved June 6, 1924,[7] that Congress, among other things, intended to provide for a comprehensive playground system in the District, and to that end constituted a commission to be known as the National Capital Park Commission (later changed to National Capital Park and Planning Commission, its present designation). By this Act the Commission was authorized and directed to acquire lands for playgrounds and, in its discretion, to assign areas suitable as playgrounds "to the control of the Commissioners of the District" for such purposes. The Trinidad Playground contains 11.01 acres. Of that total acreage, 7.67 acres were purchased on August 9, 1938, by the District of Columbia with District of Columbia funds, and 2.50 acres were purchased on August 12, 1938, by the National Capital Park and Planning Commission with funds made available by the Act of May 29, 1930, known as the Capper-Cramton Act.[8],[9] The funds expended by the National Capital Park and Planning Commission for this purpose have been repaid to the United States by the Government of the District of Columbia, which

---

3. Carr v. Corning (Browne Junior High School Parent-Teacher Association v. Magdeburger), 1950, 86 U.S.App.D.C. 173, 182 F.2d 14.

4. 8 U.S.C.A. §§ 41, 43.

5. 59 Stat. 1035 et seq.

6. There is no claim by the Interior Department defendants to control over the Wheatley Playground.

7. 43 Stat. 463, 40 U.S.C.A. § 71 et seq.

8. 46 Stat. 482.

9. The small balance of the total acreage is apparently made up by closing streets and alleys.

accordingly has paid out of its own funds for the entire tract constituting the Trinidad Playground. Also, under the provisions of the Act of June 6, 1924, the National Capital Park and Planning Commission, under date of August 1, 1942, assigned that part of the Trinidad Playground which it had purchased to the control of the Commissioners of the District of Columbia for playground purposes. Accordingly, it is the view of the District defendants that the Commissioners have control of the Trinidad Playground by virtue of ownership of the land and under the assignment to the District Commissioners, its operation by the Recreation Board being by agreement between it and the Board of Commissioners, pursuant to the Act of 1942 creating the Recreation Board, supra. The Interior defendants take the position that this Act of 1942, by implication, repealed the assignment provision of the Act of 1924, and that any attempted assignment thereunder is therefore a nullity. The reasoning of the Interior defendants is not convincing, but as I see it, a decision thereon is unnecessary, inasmuch as the Interior defendants are not expressly seeking affirmative relief and, on hearing, their counsel, in answer to a question by the Court, designed to ascertain whether their answers should be construed to comprehend a prayer for affirmative relief, replied in the negative. The plaintiffs therefore are the only parties seeking a decree declaring the Trinidad Playground to be under the jurisdiction of the Interior Department, and in view of my decision on the major question involved, they do not have the requisite legal interest to be entitled to a judicial determination as to the agency of the Government which has control of this playground. Certainly members of the public asserting the right to use the property in question do not have the necessary legal standing to entitle them to a judicial determination of the agency controlling the playground unless there has been an invasion of some legal right, which as above stated does not exist.[10]

 My decision on the major question involved is likewise dispositive of the other relief prayed, namely injunction and damages, although it might be mentioned that the statute creating the Recreation Board expressly relieves them of personal liability for damages for any official action of the Board performed in good faith, and the statute creating the Board of Education contains a similar provision.[11] The other defendants are likewise absolved from personal liability under the authority of Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, Id., 69 App.D.C. 108, 99 F.2d 143; and Allen v. United States, 81 App.D.C. 53, 154 F.2d 329.

Summary judgment will be entered for all defendants. Counsel will submit, on notice, appropriate order.

---

10. Ex parte Levitt, 302 U.S. 633, 58 S. Ct. 1, 82 L.Ed. 493; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108; Steuart & Bro. v. Bowles, 78 U.S.App.D.C. 350, 140 F.2d 703.

11. Sec. 8–203, D.C.Code 1940, Supp. VII; Sec. 31–101, D.C.Code 1940.