**TALBERT, State Director of Office of Price Administration, et al. v. SIMS.**

No. 5241.

Circuit Court of Appeals, Fourth Circuit.

June 23, 1944.

Fleming James, Jr., Director, Litigation Division, of Washington, D. C., (Thomas I. Emerson, Deputy Administrator for Enforcement, David London, Chief, Appellate Branch, and Harry L. Shniderman, Atty., all of Washington, D. C., Charles B. Elliott, District Enforcement Atty., and John B. McCutcheon, Atty., Office of Price Administration, both of Columbia, S. C., on the brief), for appellants.

C. E. Daniel and Edwin W. Johnson, both of Spartonburg, S. C. (Jennings L. Thompson, of Spartonburg, S. C., on the brief), for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of South Carolina, which permanently enjoined officers of the Office of Price Administration (defendants-appellants) from enforcing a suspension order which forbade J. E. Sims (plaintiff-appellee) from dealing in rationed gasoline for a period of 30 days, at his filling station in Gaffney, South Carolina.

Sims operated a number of retail gasoline stations, including the Star Oil Company Service Station at Gaffney, which is here involved. In May, 1943, a Notice of Hearing was served on Sims and Mabry (the employee of Sims in charge of this station), charging the violation of Ration Order No. 5C, in making sales of gasoline to customers in which loose, improper and invalid coupons were accepted. There was a further charge of an inventory shortage,

unaccounted for by coupons on hand. The Hearing Commission issued a six-months suspension order against Mabry, and a similar 30-day order against Sims. Mabry did not appeal. Upon appeal by Sims, the Hearing Administrator affirmed the order of the Hearing Commission. From a judgment of the District Court permanently enjoining the enforcement of the suspension order against Sims, an appeal has been duly taken to us.

The first question presented by this appeal involves the power of the President of the United States (and those to whom this power is duly delegated) to issue a suspension order against a dealer in rationed commodities because of a violation of the conditions upon which the dealer has been permitted to participate in the allocation system. See Section 2(a) of the Act of June 28, 1940, as amended by the Second War Powers Act of March 27, 1942, § 301, 50 U.S.C.A.Appendix, § 633.

■ We think it is quite unnecessary to discuss this question on principle. Any lingering doubts as to the existence of this power were completely dispelled by the recent decision of the United States Supreme Court in L. P. Steuart & Bro., Inc., v. Bowles, Adm'r, 64 S.Ct. 1097. And see, also, Brown v. Wilemon, 5 Cir., 139 F.2d 730; Country Garden Markets v. Bowles, App. D.C., 141 F.2d 540; Gallagher's Steak House v. Bowles, 2 Cir., 142 F.2d 530.

The Ration Order divides operators in gasoline into three classes—licensed distributor, intermediate distributor and dealer. The application of Sims for registration was as intermediate distributor *or* dealer. Equally indefinite was the certificate issued to him. These terms "intermediate distributor" and "dealer" are thus defined in the Ration Order, Section 1394.7551(14) and Section 1394.7551(7):

" 'Intermediate distributor' means any person other than a licensed distributor, who is engaged in the business of transferring gasoline for resale. Any such person shall be deemed to be an intermediate distributor as to each place at which such business is carried on."

" 'Dealer' means any person, except a distributor, who operates a service station, filling station, garage, store, or other place of business at which gasoline is transferred directly to consumers in the regular course of business."

Under the undisputed facts in this case, we think that Sims was clearly a dealer. Indeed, the record and the conduct of Sims make any other classification wholly untenable. His rights and responsibilities are to be worked out accordingly.

It is conceded here that the violations at the Gaffney station of the rationing regulations were the personal acts of Mabry. Sims neither counselled these acts nor had he any knowledge of them before they were committed. The validity of the suspension order against the innocent Sims, therefore, brings us to his relationship to the guilty Mabry.

The District Judge found this relationship to be, in connection with the gasoline sold at the Gaffney station, that of bailor and bailee, with a consequent lack of liability or responsibility on the part of the bailor, Sims, for the conduct of the bailee, Mabry. The administrative agency found that between Sims nad Mabry the real relationship was that of master and servant. We are convinced that this finding of the administrative agency is clearly right and is based on more than substantial evidence. Conversely, we believe that the finding of the District Judge finds no substantial support in the evidence and is clearly erroneous.

Sims represented the business at the Gaffney station as his own to the office of Price Administration. The station, the tanks and all the equipment were owned by Sims. Sims exercised absolute power of control over Mabry, who could be discharged at any time. Standard Oil Co. v. Anderson, 212 U.S. 215, 222, 29 S.Ct. 252, 53 L.Ed. 480; H. E. Wolfe Const. Co. v. Fersner, 4 Cir., 58 F.2d 27; Jones v. Goodson, 10 Cir., 121 F.2d 176, 179. All the financial receipts from the sale of gasoline at the station were deposited by Mabry in the bank to the account of Sims. Standard Oil Co. v. Parkinson, 8 Cir., 152 F. 681; Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449. Mabry had little knowledge of the requirements of the business—the quantity of gasoline on hand, when deliveries would be made to the station, or the parties from whom the gasoline was obtained. The gasoline was neither billed to, or paid for by, Mabry.

Mabry paid no rent, though he did share with Sims the expenses of light and water. We attach little importance to the fact that Mabry had a concession to sell soft drinks

at the station on his own account and for his own profit. Mabry was to receive from Sims a commission of 1 cent per gallon on sales of gasoline and 5 cents per gallon on sales of motor oil, with a guarantee of a minimum weekly salary of $20.00, though it was never necessary to call this guarantee into play. Nor is it without importance here that if the delivery of gasoline to the station was merely a consignment for sale, or if Sims were an intermediate distributor, it would have been the duty of Sims to collect coupons from Mabry upon each delivery. This, of course, was not done.

Finally, in this connection, we think that, by virtue of the master-servant relationship, a suspension order against Sims was validly based upon the conduct and acts of Mabry. Here the grant and exercise of the power of allocation is conditioned on the compliance by the recipient thereof with the rationing rules. The clear philosophy in this field appears to be that only trustworthy persons are permitted to deal in goods so scarce as to require rationing, and so essential to both the public and the war effort as to forbid either diversion or waste through transfers that are improper and illegal. And compliance with the rationing rules is the criterion of trustworthiness.

█ If the dealer can hide behind his employee, if the master can plead ignorance of the conduct of the servant, the enforcement of gasoline rationing would be exceedingly difficult, if not impossible. The Government must look to the dealer, the registered owner of the station, and hold him accountable for the manner and method of selling gasoline. Nor can a dealer divest himself of responsibility for observing the rationing rules by any such simple expedient as turning the actual details of running the station over to a servant. Indeed, there is added reason here for applying the ordinary rule that imposes responsibility upon the master for the acts of the servant within the scope of the service. P. F. Collier & Son Distributing Corporation v. Drinkwater, 4 Cir., 81 F.2d 200, 201.

█ We think that here the administrative agency properly exercised its authority by imposing a salutary safeguard which would have the desired effect in requiring Sims to keep his gasoline house in order. Nor would it be without effect as a timely warning to other dealers in rationed gasoline; and we find no warrant in law and fact for the injunction here issued.

The judgment of the District Court is reversed.

Reversed.