Formal findings and judgment to follow.

**DI MELIA v. BOWLES, Administrator, O. P. A.**

**No. 3100.**

District Court, D. Massachusetts.

Nov. 21, 1944.

James P. Brennan, of Boston, Mass., for plaintiff.

William B. Sleigh, Jr., Regional Enforcement Atty., and John J. Galgay, Enforcement Atty., O.P.A., both of Boston, Mass., for defendant.

FORD, District Judge.

The plaintiff brings this complaint seeking a permanent injunction against the respondents restraining the latter from enforcing an order issued by the Chief Hearing Commissioner for the Office of Price Administration for Region No. 1, dated June 15, 1944, and affirmed on appeal by the Hearing Administrator for the Office of Price Administration at Washington, D. C., suspending the plaintiff's right to deal in rationed gasoline "so long as gasoline shall be rationed." Jurisdiction is invoked under the provisions of Section 205 (g) of the Emergency Price Control Act of 1942, this section added thereto by Title 1, Section 108(e) of the Stabilization Extension Act of 1944, 50 U.S.C.A.Appendix, § 925(g). The order was issued under the provisions of Ration Order 5C, General Ration Order No. 8, and Revised Procedural Regulation No. 4, Sec. 3.1, all promulgated by the Office of Price Administration in accordance with its rationing authority under the Second War Powers Act, 301, 50 U.S.C.A.Appendix, § 633.

The plaintiff in his complaint alleges that the Hearing Commissioner in issuing the order of June 15, 1944, acted capriciously and arbitrarily and "with utter disregard of the facts presented as evidence at the hearing", and as a result his rights under the Fifth Amendment have been violated.

The respondents in their answer allege that the suspension order is based on violations of sections 1394.8004(d) (e) and 1394.8153(a) (4) (5) of Ration Order 5C (transferring gasoline to consumers without accepting validly endorsed coupons) and section 2.5 of General Ration Order No. 8 (acquiring and possessing counterfeit coupons) and deny any abuse of authority.

The following undisputed evidence was presented to the Hearing Commissioner (Rev.P.R. 4, § 2.3 et seq.):

The plaintiff is engaged at 1000 Pleasant Street, Belmont, Massachusetts, in the business of buying and selling new and used cars, servicing and repairing cars, and selling gasoline. The plaintiff delivered to his supplier in exchange for gasoline 32 gummed sheets (OPA Form R—120) on which there were attached 1,556 Class "TT" gasoline ration coupons, 1,013 (representing 5065 gallons of gasoline) of which were counterfeit. The plaintiff's filling station employees received these coupons during October, November, and December of 1943, during which period Class "TT" coupons were valid for the purchase of gasoline by authorized consumers.

A counterfeit specialist testified, and I find, that counterfeit coupons of the type herein involved were never issued in

book form, as were valid coupons; that the counterfeit coupons in evidence had no tab ends permitting their insertion in validly issued gasoline ration books; and there was no indication they had been stapled as in validly issued gasoline ration books. In other words, the coupons were accepted in loose form and were not detached from the holder's ration book at the time of delivery. Four witnesses who were in charge of or owned motor vehicles, whose registration numbers were noted on some of the counterfeit coupons, testified that neither they nor anyone in their behalf had tendered the coupons in question to the plaintiff or his employees and the notations on these coupons were forged. There was noted on three of the counterfeit coupons the registration number of a truck owned by a competitor of plaintiff's supplier which got its gasoline from its own pumps.

The notations on nearly all coupons in evidence—valid and invalid alike—were written in the handwriting of one or two persons, compelling the inference that many of the coupons received at the plaintiff's garage were endorsed fictitiously by the plaintiff or someone acting for the plaintiff before they were turned over to the plaintiff's supplier. A comparison of the manner in which the abbreviation "Mass.," written in a different handwriting on plaintiff's original registration application and his certificate of shortage of stock coupons, both to which he subscribed, with the manner in which it is written in two different handwritings on the coupons in evidence, shows the characteristics to be identical. In addition, in 64 instances there were two coupons pasted on the gummed sheets which are attached together, the perforations separating them not having been torn. These sets of two coupons have different license numbers written thereon.

With respect to the counterfeit coupons, the respondents do not contend that there was any evidence to show the plaintiff knew they were such.

The plaintiff's employees, who operate the gasoline pumps at his garage and who, according to the plaintiff, received the ration coupons, were a man of eighty-one years of age, upon whom the plaintiff principally relied, although, as he testified, he knew him to be incompetent long before October, 1943, and numerous high school boys who worked for the plaintiff from time to time. The plaintiff testified that the man and the boys were frequently cautioned and instructed as to the proper handling of ration coupons.

The plaintiff further stated that his gasoline business was "a losing proposition" and was operated solely for the "accommodation" of customers of the auto-repair and used-car departments of his business. There was no evidence, beyond the instructions given to the employees, that the plaintiff gave any supervision or attention to the distribution of gasoline from his premises.

No question is raised as to the power of the Hearing Administrator to issue suspension orders (cf. L. P. Steuart & Bro., Inc. v. Bowles, 322 U.S. 398, 64 S.Ct. 1097), and the only remaining question is whether in view of the narrow scope of this court's review (cf. Scripps-Howard Radio, Inc. v. Commissioner, 316 U.S. 4, 10, 62 S.Ct. 875, 86 L.Ed. 1229; Rochester Telephone Corp. v. United States, 307 U.S. 125, 139, 140, 146, 59 S.Ct. 754, 83 L.Ed. 1147; Virginian Railway Company v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463) there was substantial evidence before the Hearing Commissioner with respect to violations of the sections of the regulations referred to to warrant the issuance of the suspension order and whether any error of law was committed in doing so.

Although section 2.5 of General Ration Order No. 8 which prohibits the acquisition or possession of counterfeit coupons does not require any showing of wilfulness as a necessary element of a violation of such provision, yet the Hearing Administrator self-imposed the burden that before a suspension order should be issued on the charge of acquiring or possessing counterfeit coupons, it should be shown they were acquired or possessed "wilfully" or with actual knowledge of their spuriousness. It is plain that the Hearing Administrator imposed this obligation because of the difficulty confronting gasoline dealers to detect counterfeit coupons, and for this reason it was not just and proper to issue a suspension order merely on the basis of acquisition and possession of such without fault on the part of the recipient. Such a requirement had a tendency to avoid in a judicial review any contention that the Administrator abused the power reposed in him by the suspension regulation. Cf. Matter of Joe Allen Garage, Inc., Docket No. 2-33A, decided August 30, 1943, O.P.A.

Also, it will be noted sections 1394.8004 (d) (e) and 1394.8153(a) (4) (5) of Ration Order 5C, which prohibit the acceptance of loose, unendorsed, or improperly endorsed coupons, do not require any showing of wilfulness as a necessary element of a violation of these provisions and the Hearing Administrator has not required proof of wilfulness in violations of these sections as in violations of sections 2.5 of Ration Order No. 8 as a basis for suspension orders. In violations of this character there was no need to assume such an obligation to forestall any charge of arbitrariness of abuse of power. It is plain that vendors of gasoline accepting loose, unendorsed, or improperly endorsed coupons know they are committing a violation, or, if not, are stubbornly or recklessly closing their eyes to circumstances that would immediately inform them of the violation. In the latter instance they can be regarded as "wilfully" violating the regulation.

■ This court is satisfied that the Hearing Commissioner had ample evidence before him to determine that the agent or agents of the plaintiff wilfully violated both section 2.5 of General Ration Order No. 8 and sections 1394.8004(d) (e) and 1394.8153(a) (4) (5) of Ration Order 5C, especially in the light of the evidence of the number of counterfeit coupons possessed and transferred with respect to section 2.5 of General Ration Order No. 8. It is incredible that the agents of the plaintiff could have received so many counterfeit coupons in such a short space of time unless they deliberately and recklessly closed their eyes to patent facts which would have indicated their spuriousness, such as their loose state and improperly endorsed registration numbers. And further, the presence of wrong registration numbers on a large number of coupons both valid and invalid tends to support the conclusion that the agents of the plaintiff were, to say the least, recklessly indifferent to their observance of the 5C regulations in question. Such conduct on the part of the agents as was produced in evidence before the Hearing Commissioner supported a conclusion, at the least, of wilful violations of all the sections referred to within the meaning of the word as laid down in the case of United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381. Cf. Zimberg v. United States, 1 Cir., 142 F.2d 132, 138.

■ We are now confronted with the further question: In the absence of evidence to show direct participation in the violations by the plaintiff, can the wilful conduct of the plaintiff's employees be charged against him or did the Administrator exceed the limits of the authority given him by the specific provisions of the suspension regulation in so charging him?

In the case of Talbert v. Sims, 4 Cir., 143 F.2d 958, the suspension order was held valid where the agent in charge of the dealer's station was guilty of violating Ration Order 5C in making sales to customers in which loose and invalid coupons were accepted. In holding the dealer responsible for the acts of his agents, the court stated (page 960 of 143 F.2d): "If the dealer can hide behind his employee, if the master can plead ignorance of the conduct of the servant, the enforcement of gasoline rationing would be exceedingly difficult, if not impossible. The Government must look to the dealer, the registered owner of the station, and hold him accountable for the manner and method of selling gasoline. Nor can a dealer divest himself of responsibility for observing the rationing rules by any such simple expedient as turning the actual details of running the station over to a servant. Indeed, there is added reason here for applying the ordinary rule that imposes responsibility upon the master for the acts of the servant within the scope of the service." 

■ In the case just quoted the gasoline dealer was innocent of the violations committed by his agent. In the present case there is an added factor to be considered in passing on the question whether there is an abuse of power by the Administrator and the issuance of the suspension order can be justified on broader grounds. The evidence here showed complete indifference on the part of the plaintiff in the performance of a public trust that he had assumed in distributing rationed gasoline. He presented no evidence that he conducted even a reasonable supervision of his gasoline distribution. Had he done so, it is unbelievable that such extensive violations of the regulations could have taken place as was disclosed by the evidence. That counterfeit coupons were in the market was common knowledge. This is not a case where the plaintiff was "sold down the river" by his employee without fault on his part or of sporadic accept-

ance of a few counterfeit coupons with erroneous notations. Rather it was one where an employer closed his eyes with complete indifference to what was going on; the violations concerning both valid and invalid coupons were extensive; and, beyond holding him responsible by an application of the law of agency, he should be charged with his failure to prevent these extensive violations that caused irregular gasoline distribution and black market operations. By his neglect over 5,000 gallons of gasoline found its way into the black market. If such conduct as this can escape a suspension order, the power held to be valid by the Supreme Court in the Steuart case, supra, to take from a wasteful dealer a commodity so vitally needed for the conduct of the war and, as that case points out, "route to an efficient one a precious supply of material," would be seriously impaired. Idem, page 405 of 322 U.S., page 1100 of 64 S.Ct. As the Steuart case states, suspension orders are not means of punishing an offender. They are the means to accomplish the purpose of preventing those not fit and proper from distributing the rationed commodity. Essential civilian needs must be supplied and that can hardly be accomplished if conditions that were shown to exist here are overlooked. Employers should not be allowed to hide behind their wasteful agents, where it cannot be said that they themselves are free from fault or blame with respect to the waste. Whatever case may be made out for an innocent dealer, a problem that does not concern us here, yet to carry out the purpose of suspension orders, i. e., allocate rationed gasoline to careful and efficient dealers, a dealer must be held personally chargeable for waste for which he is responsible through his negligence. The plaintiff here has, to a marked degree, broken, through his agents and his personal carelessness, the condition on which his right depends. And, in that event, that right may be and should be cur-

tailed by the Administrator to the extent that fairness and justice demands. These are war times and the national interest demands such action, and if it is not taken, the purpose of suspension orders is defeated. The power delegated to the Administrator cannot be exercised in such a manner that his action is tantamount to an abuse of power. If there is abuse, it may be subjected to judicial review. Whether a suspension order should issue and for how long in the opinion of this court should be bottomed on the facts peculiar to the individual case and rest in the sound judgment of the Administrator.

The point made by the plaintiff that the suspension order is arbitrary because of its indefiniteness is without merit. The order states the suspension is to continue "so long as gasoline shall be rationed." The Second War Powers Act, under authority of which the suspension order issued, expires December 31, 1944. 50 U.S. C.A.Appendix, § 645. Consequently, the order remains effective only until that date. Whether it is extended as a result of congressional legislation beyond that date and assumes the aspect of vagueness and indefiniteness, is a matter this court has no occasion to consider at the present time.

The conclusion is there was ample evidence to warrant the issuance of the suspension order and no error of law was committed.

The preliminary injunction issued by the court under the provisions of Section 205 (g) of the Emergency Price Control Act of 1942 is dissolved and the complaint dismissed with costs.

Judgment will be entered one week from this date to give the plaintiff opportunity to apply for an injunction restraining the effective date of the suspension order pending appeal, if there is such. Rule 62(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.